**John B. N. TYLER, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 6612, 6613.**

District of Columbia Court of Appeals.

Submitted Oct. 16, 1972.

Decided Dec. 20, 1972.

---

2. We do not consider appellee's second defense of the contractual termination of liability.

John J. Flynn and Thomas L. Farmer, Washington, D. C., appointed by this court, were on brief for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, Richard A. Graham, and Richard S. Vermeire, Asst. U. S. Attys., were on brief for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

These appeals from convictions for possession of narcotics [1] and possession of implements of crime [2] present questions relating to the admission into evidence of incriminating statements made by appellant to officers executing a search warrant of his home and to the adequacy of the affidavit upon which the search warrant was issued. After considering the issues raised, we find no error and affirm.

The affidavit in support of the search warrant revealed that through a reliable informant a covert Department of Justice narcotics agent purchased heroin from one

---

1. D.C.Code 1967, § 33–402.

2. D.C.Code 1967, § 22–3601.

"Joe" who said he had obtained it from William A. Houston at a specified address. The informant also advised that the occupant of the premises was a supplier of heroin and kept the drug there. The agent, now in direct contact with Joe (who did not know of the agent's covert status), drove to that address. Joe then entered the premises while also being observed by two police officers who were on surveillance in the area. He returned with a quantity of heroin which he sold to the agent. On another occasion, the agent was again taken to the address by Joe. Joe was again observed by one of the police officers to enter the residence. After a short period, he returned and informed the agent that an ounce of heroin was inside and queried the agent as to whether he wished to purchase it. The agent declined.

When the agents arrived to execute the warrant they discovered that the premises were occupied by appellant, John Tyler, who was not then there. Upon their arrival, the agents found that appellant's wife, mother and son were there. The agents had expected to find William A. Houston living there but he was never located.

Upon conducting the search, two methadone tablets and narcotics paraphernalia were discovered in an upstairs bedroom. The agent who made the discovery placed the items on the bed in a group and proceeded downstairs. Shortly after the agent returned downstairs where appellant's family was located, three individuals unknown to him entered the premises. One of these individuals identified himself as John Tyler. He was then asked to accompany the agents to the bedroom. There he was confronted with the narcotics and the paraphernalia and asked if he recognized the items and if they were his. He responded that they were and stated, "I know I'm going to get a charge from this." At this point, he was arrested.

On appeal appellant contends (1) that the admission into evidence of appellant's inculpatory statements constitutes reversible error since these statements were obtained during a custodial interrogation without the requisite Miranda[3] warnings, and (2) that the search warrant was invalid in that it was not supported by sufficient information to give rise to probable cause.

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that statements stemming from a custodial interrogation may not be used unless "the use of procedural safeguards effective to secure the privilege against self-incrimination" are demonstrated. *Id.* at 444, 86 S.Ct. at 1612. Custodial interrogation was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (Footnote omitted). Specifically excluded from custodial interrogation was "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process . . . ." *Id.* at 477, 86 S.Ct. at 1629. This type of questioning was excluded since "[i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Id.* at 478, 86 S.Ct. at 1630. (Footnote omitted.) As relates to the execution of a search warrant, this court has stated:

"We do not think that the fact that a person is present and is requested to be seated during the execution of a search warrant in itself creates custody. . . ." [Wells v. United States, D.C. App., 281 A.2d 226, 228 (1971).]

In *Wells,* we held that simply asking a group of persons about the ownership of a coat during the execution of a warrant did not amount to custodial interrogation as contemplated by *Miranda.*

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant argues that the question of custodial interrogation must be determined by looking at all the relevant factors surrounding the interview. He concludes that appellant's inability to leave the premises,[4] the fact that the investigation had focused on appellant, the general atmosphere of the interview, and the extraordinary nature of the inquiry combine to indicate that appellant was deprived of his freedom of action in a significant way. After reviewing the record, we reach the contrary conclusion.

The fact that a person is present during the execution of a search warrant and not free to go does not by itself constitute custody of the degree requiring presence of counsel for the kind of questioning here. Wells v. United States, *supra*. Appellant's assertion that the investigation had focused on the appellant to the exclusion of everyone else is not supported by the record. The agents had expected to find one William A. Houston residing at appellant's address. They had no idea that appellant resided there until they arrived to execute the warrant and discovered his family. In spite of appellant's contention to the contrary, there is no testimony to show the officers believed the discovered contraband belonged to appellant or that the bedroom in which it was found was that of appellant. From these facts there is no evidence to support the contention that the investigation had focused on appellant to the exclusion of all others. Indeed, it appears that the officers were logically attempting to determine from the head of the household the ownership of these items. As to the atmosphere of the interview, we find nothing in the record to indicate any force or coercion on behalf of the police or to indicate any sort of antagonistic force which was the primary concern of *Miranda*.

■ Finally, the propounded question as to whether appellant recognized the contra-

band appears to be nothing more than the general fact-gathering questioning excluded from the *Miranda* holding. The officer was justified in asking the question since he had to determine ownership in order to complete his return on the search warrant, and also to determine if the contraband might belong to the William A. Houston the officers expected to find residing at the address. Viewing the relevant factors surrounding the interview, we find that there was no custodial interrogation of the kind limited in *Miranda*, and therefore the inculpatory statements were properly admitted into evidence.

■ The determination of whether there was an adequate showing of probable cause to support a search warrant "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

■ Appellant argues here that the affidavit in support of the search warrant was insufficient since it (1) failed to present sufficient information to enable the magistrate to determine the reliability of the informant and the underlying basis for the informant's assertions; and (2) failed to present a substantial basis for crediting the hearsay allegations of the affiant. There was no need to demonstrate reliability of the informant since he merely aided in the initial contact with Joe. Thereafter, the investigation proceeded independently. Since the affidavit contained observations of the agent accompanying Joe to the address respecting a purchase of heroin and the presence of heroin in the premises, we hold the affidavit to reflect sufficient probable cause to issue the search warrant. United States v. Thornton, 147 U.S.App. D.C. 114, 454 F.2d 957 (1971). Moreover, these visits were observed by police officers on surveillance offering further cor-

---

4. One of the agents executing the search warrant testified that none of the individuals who entered the premises were then free to go.

**228**

roboration of the agent's visits with Joe. This holding is consistent with the commonsense and realistic approach to the adequacy of the probable cause showing dictated by *Ventresca*.

 Appellant also argues that there is no evidence to show that Joe obtained the heroin from within appellant's residence since Joe was not searched by the undercover agent prior to his entry. It is on this factual difference that appellant seeks to distinguish United States v. Thornton, *supra*. This difference does not give rise to a legal distinction of that case. A commonsense reading of this affidavit demonstrates that the agent's covert status was unknown to Joe and therefore he was in no position to search Joe without compromising his status. In the case where an informant is aware of the agent's true identity and desires to obtain pecuniary or other benefits, there is the inherent danger that he might carry narcotics on himself in order to later create the impression that he obtained them from another. But where, as here, the individual is unaware of the agent's true identity there is no reason to assume false dealings since Joe had nothing to gain by the pretense of obtaining the narcotics elsewhere.

As to appellant's second point that the affiant was not one of the officers or agents involved in the observations and therefore the affidavit failed to present a substantial basis for crediting the hearsay allegations of the affiant, we merely note that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." [5] United States v. Ventresca, *supra* at 111, 85 S.Ct. at 747. (Footnote omitted.)

The judgments are, accordingly,

Affirmed.

5. We can find no support in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) for appellant's assertion that the affidavit must be found first on the personal observations of the affiant and then on personal observations of law enforcement officers reporting directly to him.