323 So.2d 406

**Glenn DeGRUY, alias**

v.

**STATE.**

**6 Div. 562.**

Court of Criminal Appeals of Alabama.

March 18, 1975.

Rehearing Denied April 22, 1975.

Rosen, Wright, Harwood & Albright, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen. and Brent Thornley, Asst. Atty. Gen., for the State, appellee.

CATES, Presiding Judge.

Possession of marijuana for personal use: sentence, twelve months in the county jail together with a $1,000 fine. Act No. 1407, September 16, 1971—Alabama Uniform Controlled Substances Act.

I

About 11:00 a. m., September 29, 1971, four deputy sheriffs and two policemen came to the door of an apartment wherein DeGruy was a guest. Announcing their intention to execute a search warrant, the officers ordered everyone to sit down and be still (R. 91, 107)[1]. They then proceeded to search the apartment.

One Greg Yestadt was seated at a table on which the officers found a metal bowl and a pipe, both containing marijuana. (R. 44–45) Elsewhere was a bag, belonging to Yestadt (R. 31), containing 31 lids of marijuana. (R. 80) Between the wall and the end of a couch on which DeGruy and Margaret Conner were seated the officers found a yellow canvas bag containing marijuana, a homemade pipe, and two letters addressed to DeGruy. (R. 56) Before DeGruy was given the *Miranda* warnings (R. 60), the officer who found the bag asked DeGruy if it belonged to him, to which question DeGruy gave an affirmative reply. (R. 61)

DeGruy waived a jury trial (R. 2, 36) and asked for youthful offender treatment. (R. 3–4) The petition was denied because he was over twenty-one at the time of the offense. (R. 14–15)

Over objection, the court allowed the inculpatory statement acknowledging ownership of the bag to be received into evidence, stating that the court would rule later on whether it would use the statement in arriving at a judgment. (R. 58–61)[2]

1. "The Miranda warning was read, I believe, as we were leaving; which is maybe an hour and a half later; but I don't think I was placed under arrest officially till we got—till we were leaving. * * *"

2. "Q All right, sir. Now, did you examine any other contents, if any, of the yellow canvas bag that you told us about?
   "A Yes, sir.
   "Q What else, if anything, did you find in there?
   "A As I said earlier, the plastic bag containing marijuana, home made pipe constructed from a aluminum can; looked as if probably was a film can with a stem made from a plastic can, a small canister containing pills. There was two cans of Skoal.
   "Q That's Skol?
   "A Skoal, I believe.
   "Q Al?
   "A Yes, sir.
   "Q All right.

"A There was two letters in the canvas bag addressed to Glenn DeGruy.
   "Q Both of them addressed to Mr. DeGruy?
   "A There was two in the bag addressed to Glenn McGruy.
   "Q All right, sir. Now, I'll ask you this, could you tell us—well, first let me ask you do you recall any other contents of the bag, yellow canvas bag, or is that all?
   "A That's all my notes indicate. There was three letters in all in the bag.
   "Q Three?
   "A Yes, sir.
   "Q All right, sir. Only two of them addressed to Mr. DeGruy?
   "A Yes, sir.
   *   *   *   *   *
   "Q Now, did you move that bag, the yellow canvas bag from where it was?
   "A Yes, sir.
   "Q Did you—I'll ask you did you make any statement to the Defendant concerning this bag?

The record is devoid of any subsequent hearing or ruling on the admissibility of this statement.

On March 30, 1973, over four months after the date of the trial, the court adjudged DeGruy guilty of possession of marijuana for personal use and sentenced him to twelve months confinement in the county jail and a fine of one thousand dollars. (R. 21–23)

The District of Columbia Court of Appeals has twice held that the questioning of a person whose movement is restricted during a police search does not constitute a "custodial interrogation" within the meaning of *Miranda. Tyler v. United States,* D.C.App., 298 A.2d 224; *Wells v. United States,* D.C.App., 281 A.2d 226. We distinguish the latter case as well as *People v. Fischetti,* 47 Ill.2d 92, 264 N.E.2d 191.

The Fifth Circuit in *Brown v. Beto,* 468 F.2d 1284, per Gewin, J. held that one who was present during a search of his store under a warrant was in custody rendering inadmissible a self-incriminatory statement made by him to the searchers prior to receipt of the *Miranda* warnings. There the court noted certain criteria looked to in determining whether or not there had been a custodial interrogation, probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation.

We quote from *Brown,* supra:

"Before law enforcement officers can subject a citizen to custodial interrogation, he must first have been given the *Miranda* warnings. In *Miranda* 'custodial interrogation' was defined as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' This court has yet to formulate a general rule for distinguishing custodial from non-custodial interrogation but instead has preferred to take a case-by-case approach. It has been made clear that the simple fact that interrogation takes place in the familiar surroundings of the defendant's home or place of business rather than in the police station does not necessarily mean that the defendant is not being subjected to custodial interrogation. In making the distinction between custodial and non-custodial interrogation this court has singled out certain criteria as having special significance; these include probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. Although none of these factors is alone determinative, we have recently indicated that the most compelling is whether or not the focus of the investigation has finally centered on the defendant.

"Evaluating the present case in light of the foregoing discussion, we find that Brown was in custody when he made the incriminating statement in question. At that moment the focus of the investigation was clearly centered on Brown. The police had arrived at the drugstore with a search warrant which was supported by an affidavit naming Brown as the possessor of suspected contraband. They immediately summoned Brown from the back of the store to witness a painstaking search of the premises. From these facts it can readily be inferred that the police had intended to

"A Yes, sir.
"Q What was that statement?
"A I asked the Defendant if the bag belonged to him.
"Q All right, sir. And did he respond to that question?
"A Yes, he did.
"MR. WRIGHT: Your Honor, please I want to object to anything he stated.

"THE COURT: I'll allow him to answer, subject to an argument on the law pertaining to its admissibility and if the Court determines it's not admissible, I'll reject it from the evidence.
"MR. WRIGHT: All right, sir." (R. 56–58)

catch Brown 'red-handed.' Furthermore it must have appeared to Brown that he was not free to go at any time. Jarred from a position of repose, Brown was confronted with nine armed officers who closed the doors of the store and obliged him to be present as they combed the premises. The district court properly ruled that in these threatening circumstances Brown should have been given the protection the *Miranda* warnings afford before being asked 'What is this?'

"Implicitly recognizing the validity of the district court's approach, the State of Texas argues that the applicability of *Miranda* principles alone should not be conclusive and that instead we should review the entire record in this case to determine whether under the totality of the facts and circumstances disclosed by the record Brown's statement was voluntarily given. In effect Texas urges us to reincarnate the old due process standard of voluntariness for testing the admissibility of incriminating statments, a test that the Supreme Court intended to obviate with its decision in *Miranda*. Applying this test, though by no means adopting it, we still find Brown's statement inadmissible.

"The situation in which Brown found himself on the evening of March 11, 1966 was obviously coercive. He had been resting in a back room of the store when he was unexpectedly summoned to the front where he found the doors closed and nine armed officers waiting for him. The police required him to watch while they engaged in a lengthy search of the premises. After 30 to 45 minutes and with the tension mounting, the brown paper sack was discovered, Brown was confronted with it, and he was asked 'What is this?' He had not been warned of his right to remain silent and that any statement he did make could be used as evidence against him.

"Although the issue presented is subject to valid contentions pro and con, we feel that Brown's answer to the question posed was not his 'free and voluntary act.' In making this determination we do not hesitate to recognize that the presentation and execution of a search warrant in the nighttime by a substantial number of police officers at premises in the possession and control of an individual is tinged with a certain amount of coercion. As Mr. Justice Stewart aptly stated in *Bumper v. North Carolina*. [391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797]

'When a law enforcement officer claims authority to search a home under a warrant he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.'

"Considering all of the foregoing factors, we conclude that Brown's statement was more the product of the intimidating setting in which he found himself, a setting created by the police, than his own voluntary admission."

In the instant case, the testimony of DeGruy and Margaret Conner is uncontradicted that they were told to *sit down* and be still before the search began.

■ On finding the yellow bag containing marijuana and two letters addressed to DeGruy one of the officers asked him if the bag was his. The investigation had then focused accusatorily on DeGruy. See *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311.

Since the officer's question came before the *Miranda* warnings, the trial court was in error in allowing the statement to be introduced into evidence.

■ Where a case is tried by a judge without a jury, the introduction of illegal evidence dictates reversal unless the re-

maining evidence is without conflict and is sufficient to support the judgment. *Dutton v. State,* 226 Ala. 1, 145 So. 581; *Pigford v. Billingsly,* 264 Ala. 29, 84 So.2d 664; Supreme Court Rule 45, Code 1940, T. 7 Appendix.

Excluding the evidence of DeGruy's ownership of the yellow bag, the only evidence in support of DeGruy's conviction for possession of marijuana for personal use is the presence of some marijuana in a bowl on the table and DeGruy's knowledge that Yestadt had marijuana in the apartment.

DeGruy had just arrived at the apartment in which the marijuana was found on the morning of the search, and the apartment was not owned or rented by him.

■ In *Radke v. State,* 42 Ala.App. 397, 293 So.2d 312, aff'd 292 Ala. 290, 293 So. 2d 314, this court set out three attributes of possession: (1) actual or potential physical *control* (2) intention to exercise *dominion* and (3) external manifestations of intent and *control.* See *Garsed v. State,* 51 Ala.App. 622, 288 So.2d 161; 28 C.J.S. Supp. Drugs and Narcotics §§ 157–159.

## II

■ The inventory of items seized during the search of the apartment listed five packages of heroin. Evidence of heroin in a case dealing with possession of marijuana is inadmissible due to its irrelevancy and its highly prejudicial nature. The trial court committed reversible error in admitting the inventory into evidence over DeGruy's objection. We do not consider *Brantley v. State,* 294 Ala. 344, 317 So.2d 345 (1975) to be controlling.

The judgment below is reversed and the cause is remanded for new trial.

Reversed and remanded.

All the Judges concur, except De-CARLO, J., who dissents.

DeCARLO, Judge (dissenting).

From my review, the relevant facts surrounding the question did not demonstrate the kind of custodial interrogation denounced by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and based upon the following, I respectfully dissent:

Appellant was visiting in the apartment of Greg Yestadt at the time the search warrant was executed. Upon the arrival of four officers, all of the six occupants were told to take a seat and be still. The presence of appellant under these circumstances did not create "custody." *Wells v. United States,* D.C.App., 281 A.2d 226 (1971).

At the time the yellow bag was found, the officers had already recovered marijuana, smoking paraphernalia, and heroin, and they had no idea as to the ownership of these items.

There is no evidence to indicate the investigation had focused on appellant to the exclusion of the others. The yellow bag contained two letters addressed to appellant and one to Margaret Conners. After inspecting the bag, Officer South asked appellant, "If the bag belonged to him."

Nothing in the record establishes a police dominated atmosphere which would affect substantially the appellant's will to resist or even compel him to speak out. On the contrary, appellant was among friends in an apartment which lacked the coercive setting or compelling influences of a station house.

The appellant's affirmative answer to the officer's inquiry was nothing more than general on-the-scene questioning as to facts surrounding a crime. It was part of the fact-finding process, and specifically excluded under the holding in *Miranda,* supra.

Five other people were present in the apartment, and I submit, the officer, after

finding the letters was justified in determining the bag's ownership. *Tyler v. United States,* D.C.App., 298 A.2d 224.

I distinguish *Brown v. Beto,* 5 Cir., 468 F.2d 1284 (1972), for these reasons; (1) the affidavit upon which the search warrant was issued named Brown as possessor of the suspected contraband; (2) he was manager of the drug store; (3) he was the only one called to the rear while the search was being conducted and; (4) Brown was the only one present besides the officers when the heroin was found.

From the facts in the instant case, I am convinced the investigation did not focus on DeGruy until he acknowledged ownership of the bag, however, the investigation in *Brown,* supra, had centered on him from the moment the officers entered his drug store.