Violation of the Alabama Uniform Controlled Substances Act (possession of marijuana not for personal use); three years.
Lawrence T. Turner, an agent of the ABC Board of the State of Alabama, had as his primary duty, the enforcement of whiskey and narcotic laws. Turner was stationed in Clay and Randolph Counties and lived in Wedowee, Alabama. About one week prior to May 20, 1976, he received a telephone call from an unidentified caller who told him "there was about three-hundred marijuana plants in a casket box" on the back side of Phillip Lee's pasture. Several days after the call, Turner and Harry Sheppard, another agent, went to the Lee pasture. After walking for approximately an hour they found the marijuana in a metal casket box on the bank of a small branch at the edge of a honeysuckle patch.
Turner testified that there was "a well-worn trail" leading to the location of the marijuana. He went on to say that there were car and tractor tracks leading to the trail.
According to Turner it was sometime after lunch on May 19, 1976 when they found the box, at which time, Agent Sheppard returned to Ashland, Alabama to get the *Page 745 
sheriff and deputies. They returned and remained there until dark on May 19th. The following day Turner and Sheppard met Deputy Ray Latham and the three went to the pasture "at daylight." Turner said he and the other two officers were in a ditch some fifty or sixty yards from where the casket was located. That afternoon at approximately 1:20 or 1:25, they heard a tractor. Turner recalled that they watched the tractor come into view and go straight to the marijuana and stop. He testified that the person driving the tractor was Phillip Lee, the appellant, and that in his judgment the tractor had come from the direction of the appellant's house. Turner said the tractor was driven straight to the casket where it stopped. After the appellant stopped the tractor, he went to the metal casket and "started pulling the marijuana plants, and shaking the dirt off them." The officer observed the appellant for about fifteen or twenty seconds before approaching him from behind. Turner spoke to the appellant and asked, "How are you doing Phillip?" The appellant turned and responded, "G-damn, I didn't think this would ever happen to me."
Turner testified that Lee was placed under arrest and the marijuana was carried to the appellant's house on his tractor. The appellant had pulled up thirty-six plants and the officers pulled an additional thirty-seven plants from the casket. Upon arriving at the appellant's house, the sheriff was called, and when he arrived, the marijuana was turned over to him.
During Turner's testimony, he stated that he had received training in the identification of marijuana and narcotic "plants". Turner stated that he knew the characteristics of a marijuana plant and that some even grow to a height of eight feet. Turner said he was familiar with growing a marijuana plant and that, "it takes plenty of water and sunshine." Turner acknowledged that it would be his judgment that the seventy-three marijuana plants found in the metal casket were being grown correctly.
Harry Sheppard, also employed in the drug and alcohol division of the ABC Board, was with Officer Turner when marijuana was found on Phillip Lee's farm in May of 1976. His testimony was substantially the same as that of Officer Turner, except during cross-examination, he said that he had previously been hunting marijuana on the appellant's farm. Sheppard said that he saw a casket down at the hog parlor a year before that had marijuana in it.
Ray Latham, a deputy sheriff for Clay County, was with agents Sheppard and Turner when they were conducting the surveillance of Phillip Lee's farm. In addition to giving a similar account of what had occurred prior to and after the arrest of Phillip Lee, Latham said that the marijuana plants were placed in his possession at the sheriff's office for transport to the State laboratory. He said he took a sampling from the plants, sealed them in a brown envelope and carried them to the State toxicologist's office in Auburn. Latham testified that the plants remained in his custody and control from the time they were given to him by Sheriff Morris, and that they were in the same condition when he delivered them to Auburn as they were when he was given possession of them at the sheriff's office in Clay County.
Billy Morris, Sheriff of Clay County, stated that on May 19th he accompanied Agent Sheppard to Lee's farm where he saw marijuana growing in a metal casket. He said the following day he saw the appellant at his farm and saw marijuana plants lying on the ground in the appellant's yard. Morris took two bunches of marijuana to his office and placed them in an evidence vault where they remained for about a month until they were dried. After drying, some leaves were sealed in an envelope and given to Deputy Latham, who was instructed to take the envelope to the lab in Auburn and have the marijuana analyzed.
Fred Taylor Noggle, Jr., was the director of the Auburn Toxicology Laboratory. He related that he specialized in the examination and identification of dangerous drugs and narcotics and during the five and one-half years he had been a toxicologist, he *Page 746 
had examined several thousand narcotic drugs.
Noggle testified that Deputy Latham delivered an envelope to him containing a green-brown vegetable matter. According to him, the laboratory analysis of the substance revealed the presence of marijuana which contained the substance, tetrahydrocanabinol. During cross-examination, Noggle testified that marijuana was not usually found growing wild in Alabama.
At the completion of Noggle's testimony, the State rested and after the jury had retired from the courtroom, the appellant made a motion to exclude the State's evidence on the ground that a prima facie case had not been made. The motion was denied and the appellant was called to testify in his own behalf.
Phillip Lee stated that in May of 1976 he lived on his father and mother's 130 acre farm and had lived there around fourteen or fifteen years. According to Lee, on the day in question, he had gone "over to the back forty" to do some "bush-hogging." He said that he rode over there on the tractor to "pick up" the "bush-hog." Lee said that sitting at the edge of the field was one of the caskets that had originally been at the barn for the purpose of feeding livestock. According to him, out of curiosity, he went to see what the casket was doing there. He stated there were some kind of plants growing in the casket but said, "I didn't have much of a chance to do anything next . . . the arresting officers came out of the bushes there."
Lee denied pulling up any of the plants or having planted the marijuana in the casket. He also denied that he had assisted anyone in moving the casket to the area where it was found.
Lawrence Turner and Harry Sheppard were recalled for rebuttal testimony and each testified that prior to the time the marijuana was found in the casket they did not at any time see the "bush-hog" in the area. Each testified on cross-examination that they did not see a bush-hog but they were not looking for one.
 I
It is contended that the verdict, "we the jury find the defendant guilty of violation of the Alabama Controlled Substances Act," fails to show whether the jury found the defendant guilty of a felony or of a misdemeanor. Counsel argues that the trial court was therefore without authority to impose a felony sentence.
The Alabama Uniform Controlled Substances Act, T. 22, § 258 (47)(a), Code of Alabama 1940, Recompiled 1958, in pertinent part reads:
 ". . . Any person who possesses . . . controlled substances . . . is guilty of a felony and upon conviction for first offense may be imprisoned not less than 2 nor more than 15 years and, in addition, may be fined not more than $25,000: except any person who possesses any marihuana for his personal use only is guilty of a misdemeanor and upon conviction for the offense shall be imprisoned in the county jail for not more than 1 year, and in addition, shall be fined not more than $1,000; but the penalties for the subsequent offenses relating to possession of marihuana shall be the same as specified in the first sentence of this section 258 (47)(a)."
Possession of marijuana for personal use is a lesser included offense under an indictment charging possession of marijuana.Van Nostrand v. State, 56 Ala. App. 141, 319 So.2d 760; Butts v.State, Ala.Cr. App., 346 So.2d 497. Where marijuana is for personal use only the crime is a misdemeanor for the first offense, otherwise, it is a felony. Palmer v. State,54 Ala. App. 707, 312 So.2d 399, reversed on other grounds. The degree of possession whether a felony or misdemeanor depends upon the use of the prohibited substance. Powers v. State,49 Ala. App. 690, 275 So.2d 369, reversed on other grounds.
The burden of proving that the possession was for personal use is a defensive matter and the burden of bringing himself within the misdemeanor exception of the act creating the offense was upon the appellant *Page 747 Fuller v. State, 39 Ala. App. 219, 96 So.2d 829; Schenher v.State, 38 Ala. App. 573, 90 So.2d 234. See Johnson v. State,51 Ala. App. 649, 288 So.2d 186; Corbin v. State, 55 Ala. App. 33,312 So.2d 604, footnote 1, p. 34.
In the present case the trial court specifically instructed the jury on three possible verdicts returnable under the indictment presented against this appellant. The three proposed verdicts given to the jury without an exception being noted by the appellant were: (1), "We, the jury find the defendant guilty of violation of the Alabama Uniform Controlled Substances Act." (2), "We, the jury, find the defendant guilty of possession of marijuana for his own personal use." (3), We the jury find the defendant not guilty."
The burden of proving that the appellant did not possess the marijuana for his personal use was not on the State. It was the duty of the appellant to bring himself within that exception in the statute. There is no evidence from which the jury might conclude beyond a reasonable doubt that the appellant's possession was in fact for his personal use.
We are of the opinion that the evidence was sufficient to sustain the conviction, and the motion to exclude was properly overruled.
 II
The appellant also maintained that the verdict of the jury was not sufficiently definite to allow an entry and pronouncement of judgment on the law. Counsel argues that the indictment charged the defendant with a general violation of the Alabama Uniform Controlled Substances Act, which defines violations and punishments for both felonies and misdemeanors. Counsel insists that where the indictment charges a felony in one count and a misdemeanor in another, a general verdict is without effect and the court is without authority to pronounce judgment.
In Blount v. State, 49 Ala. 381, the Supreme Court ruled that where a verdict merely ascertained the defendant's guilt without more it is properly construed to mean guilty as charged in the indictment and authorizes the pronouncement of sentence. The court reasoned:
 "The verdict was responsive to the issue, ascertained and declared the guilt of the appellants, and authorized the judgment rendered. That the words `as charged in the bill of indictment,' or words of similar import, are not added to the finding of guilty, does not render the verdict incomplete. The law supplied them by referring the finding to the indictment, and the offence therein charged."
In Ramsey v. State, 43 Ala. App. 617, 197 So.2d 763, this court said that no requirement exists for the jury to indicate by its verdict whether a defendant is guilty of a felony or a misdemeanor and, in fact, it is without authority to so specify in its verdict. This court in Russell v. State, 231 Ala. 297,165 So. 255, further stated:
 "The verdict will be referred to the indictment, without adding `as charged in the indictment,' or other like recital."
In the present case the single count indictment was framed under the Alabama Uniform Controlled Substances Act and was an indictment for a felony. Even though the penalty provision of § 258 (47)(A), of the act provides for an exception which is a partial defense it does not create separate degrees of the offense. The exception relates to the first time conviction for possession of marijuana for personal use and as such would not make the general verdict form as used in Isbell v. State,54 Ala. App. 85, 304 So.2d 904, defective in the present case.
Therefore a general verdict refers to the felony indictment and the form used in this case was sufficient to warrant sentencing under the felony provisions of the act.
 III
The appellant insists that his failure to object at trial to a faulty verdict does not waive his right to have error corrected on appeal. He argues that this court has the *Page 748 
right to notice errors of the lower court when an error is very plain and it is necessary to meet the ends of justice. Swindlev. State, 50 Ala. App. 403, 279 So.2d 574.
No objection was interposed to the reception of the verdict by the trial counsel but it is assigned as error on this appeal by new and retained counsel.
In our judgment, the verdict in this case is not so unintelligible as to render it invalid and one need not speculate on what the jury intended to do. The intention of the jury can be gleaned from the choice of verdicts they had before them and the verdict ultimately rendered. See Vol. 23A of C.J.S. Criminal Law § 1416.
 IV
The appellant's motion to exclude the State's evidence on the grounds that a prima facie case was not established and his later motion for a new trial were each properly overruled.
There are three essential elements necessary for the proof of possession of controlled substances. Those elements are:
 ". . . (1) actual or potential physical control (2) intention to exercise dominion and (3) external manifestation of intent and control."
Cook v. State, Ala.Cr.App., 341 So.2d 183, citing DeGruy v.State, 56 Ala. App. 521, 323 So.2d 406.
The law seems clear that when the presence of the accused at the scene is established along with evidence of his knowledge of the presence of the prohibited substance which can be shown circumstantially, the issue of the defendant's guilt should be submitted to the jury. Radke v. State, 292 Ala. 290,293 So.2d 314; Parks v. State, 46 Ala. App. 722, 248 So.2d 761; Daniels v.State, 49 Ala. App. 654, 275 So.2d 169; Fields v. State, Ala.Cr.App., 333 So.2d 861.
After reviewing the evidence submitted at trial, a substantial portion of which is recited above, it is our judgment that the requirements set forth in Cook v. State, supra, and Radke v. State, supra, were met. Legal evidence was presented to the jury from which they could by fair inference find the defendant guilty. The existence of such evidence is a question of law and its weight and probative value is for the jury. Under these circumstances, this court has no authority to disturb the verdict. Haggler v. State, 49 Ala. App. 259,270 So.2d 690.
No error appearing in the record, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.