513 So.2d 8 (1986)
Geary Herber JONES
v.
STATE.
6 Div. 273.
Court of Criminal Appeals of Alabama.
June 10, 1986.
Rehearing Denied September 9, 1986.
Certiorari Quashed August 28, 1987.
*9 Frances Heidt of Falkenberry, Whatley & Heidt, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., Gerrilyn V. Grant, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-1541.
LEIGH M. CLARK, Retired Circuit Judge.
This particular case has been on the docket of the trial court, the docket of this Court, and the docket of the Alabama Supreme Court for an extraordinarily long period of time subsequent to its commencement by indictment that charged in pertinent part that this appellant:
"... Did on to-wit: November 24, 1980, while at or near Hangar One South, 4725 65th Place North, Birmingham, Jefferson County, Alabama, possess in excess of 2.2 pounds cannabis, a controlled substance, to-wit: 4032.1 pounds, in violation of Act No. 80-587 of the 1980 Regular Session of the Alabama Legislature, and that such possession took place subsequent to May 28, 1980."
This statement as to the time involved is made without any reflection whatever upon either of the parties or their respective counsel or anyone else. The trial was commenced within a reasonable time after the return of the indictment and with reasonable dispatch. A large part of the time taken after the case was appealed was appropriately devoted to the efforts of appellant's counsel to obtain what they considered to be the fixation of a non-excessive appeal bond, which efforts have been considered and ruled upon by the trial court, this Court, and the Alabama Supreme Court.[[*]]
The court reporter's transcript of the proceedings in this case is composed of seven hundred eighty-five pages, a large part of which is devoted to testimony given out of the presence of the jury on a hearing of motions by defendant to suppress particular items of expected testimony on behalf of the State, as to which no contention is made in brief of counsel for appellant. Counsel for each of the parties on appeal includes a lengthy "STATEMENT OF THE FACTS" without adopting or acceding to the STATEMENT OF THE FACTS contained in the brief of counsel for the other party. We now set forth what we deem to be a correct summary of the facts as shown by the evidence in the case. In doing so, we adopt some of the language found in the brief of counsel for appellant *10 and some of the language found in the brief of counsel for appellee.
On November 24, 1980, at 4:35 A.M., an airplane, recognized as a blue Lockheed Lodestar, landed at the Birmingham Airport, coming to a stop near Hangar One, South. The weather was very inclement. Two unidentifiable white males left the area where the plane stopped, escaping over a fence. Officers at the scene removed a number of bales of marijuana, food, clothing, and certain equipment, including portable vacuum cleaners and portable scanners with attached batteries. One of the men was described as being approximately five feet, seven and a half inches tall and wearing a blue jean jacket. The other man was described as approximately six feet and one inch tall and as wearing blue jeans.
The airplane was stacked with 94 bales of some 4000 pounds of marijuana. There was also found in the airplane a sales receipt for three life vests purchased on November 23, 1980, which sales receipt had the name George Jones as purchaser on it. The sales receipt was from a company called Red Aircraft Services, Incorporated.
In their investigation as to the identity of the persons on the plane who had landed at the Birmingham Airport, Officers Thornton, Luker, and Batson went to Fort Lauderdale, Florida, to work with Trooper Miller of the Florida Highway Patrol. Prior to the arrival of the Alabama officers, Trooper Miller had gone to Red Aircraft Services to investigate a lead given to them by Alabama officers. Trooper Miller's investigation led him to 321 Lakeview Drive, Building 28, Apartment 204, on November 25, 1980. Officer Miller knocked on the door but there was no answer. While there, he observed an open window and two newspapers on the balcony. Trooper Miller, with the Alabama officers, returned to that address the following morning, when a man who identified himself as Geary Jones answered the door. Miller then informed Appellant he was under arrest for a traffic offense and asked him to dress more completely. Miller followed Appellant to his bedroom, where Miller saw a pair of blue jeans and shoes on the floor with red mud on them, comparable to the dirt near the Birmingham Airport but unlike any dirt within hundreds of miles of Fort Lauderdale. Miller also saw an airline ticket cover when Appellant opened the bathroom door. Appellant was then handcuffed and taken to Miller's patrol car, where Alabama officers questioned him about the incident in Birmingham. Miller then took Appellant to the Broward County Sheriff's Office, where he was photographed and fingerprinted. Officer Thornton then received from Trooper Miller a fingerprint card and a photo lineup containing a picture of appellant. The fingerprint card was used to make an identification of the latent print found on each of the two items removed from the plane. Miller returned to Appellant's home to execute a search warrant on December 5, 1980.
Hereinafter we discuss all of the three issues presented in brief of counsel for appellant.

I.
The caption of the first issue presented in brief of counsel for appellant is as follows:
"THE STATE FAILED TO PROVE A PRIMA FACIE CASE, AND THUS, APPELLANT'S MOTIONS FOR A DIRECTED VERDICT OF ACQUITTAL, TO EXCLUDE THE STATE'S EVIDENCE, AND FOR JUDGMENT OF ACQUITTAL AFTER THE VERDICT SHOULD HAVE BEEN GRANTED."
We need not determine the issue of counsel for appellant to the effect that the evidence as a whole failed to show that defendant was at any time in actual possession of the marijuana, and we proceed with the task of determining whether he was guilty of constructive possession thereof. As to this, counsel for appellant says the State was required to prove "beyond a reasonable doubt that the accused knew of the presence of the prohibited substance,"[1] as set *11 forth in Daniels v. State, 49 Ala.App. 654, 657, 275 So.2d 169, 172 (1973). We agree with counsel for appellant in the argument that "The elements of possession have been defined as `(1) actual or potential physical control, (2) intention to exercise dominion, (3) external manifestations of intent and control ..." in Cook v. State, 341 So.2d 183 (Ala.Cr.App.1976), quoting DeGruy v. State, 56 Ala.App. 521, 323 So.2d 406, cert. denied, 295 Ala. 399, 323 So.2d 411 (1975)." Nevertheless, we do not agree with counsel for appellant in the argument to the effect that the facts in the instant case are not distinguishable from those in Crafts v. State, 439 So.2d 1323 (Ala.Cr.App.1983). The instant case is readily distinguishable from Crafts v. State, supra, in that, as stated in the opinion by Presiding Judge Bowen in that case, at 439 So.2d 1325:
"Reduced to fundamentals, all the State showed was that the defendant's residence abutted land on which marijuana was growing....
"... Here the facts and circumstances only give rise as to the suspicion of guilt and are insufficient to support the conviction. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978)."
We are of the opinion that the evidence we have summarized above was sufficient "to prove a prima facie case" of trafficking in marijuana and that appellant's first issue as quoted hereinabove should be determined adversely to appellant.

IIa.
In the brief of counsel for appellant, appellant's second issue is thus captioned:
"THE ADMISSION OF APPELLANT'S FINGERPRINTS AND PHOTOGRAPHS, AND THE EVIDENCE OBTAINED THROUGH THEIR USE, VIOLATED APPELLANT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS.
Counsel for appellant divides his argument as to the second issue into three parts, which he letters a, b, and c. Under the subcaption of a, counsel for appellant states:
"Officer Miller had no authority to arrest Appellant in his home for a misdemeanor committed outside his presence unless the actual warrant was in his possession."
Counsel for both parties on appeal are apparently in agreement that the law of Alabama is to the effect that the law of the place of an arrest applies to the determination of the legality of the arrest. Tiner v. State, 279 Ala. 126, 182 So.2d 859 (1966); Dickerson v. State, 43 Ala.App. 694, 200 So.2d 487 (1967). However, in neither of the cited cases was there involved a question as to whether the conduct under consideration constituted a violation of rights safeguarded by the Fourth or Fourteenth Amendments of the Constitution of the United States as contended by appellant. At any rate, this particular issue is directed at the action of the trial court similar to the action of the trial court that was upheld by the District Court of Appeals of Florida in Wigfall v. State, 323 So.2d 587 (Fla.App. 1975), from which we quote the following:
"[A]ppellant filed a motion to suppress evidence on the grounds that his rights against unlawful search and seizure had been violated, and that the provisions of § 30.384 of the Code of Metropolitan Dade County, relating to the empoundment of motor vehicles and inventory searches, had not been followed. On January 17, 1975, a hearing was held on this motion. During the course of the hearing, appellant's motion to suppress was denied and appellant entered a plea of nolo contendere, reserving the right to appeal which was accepted by the trial court. At the conclusion of this hearing, the court issued its order withholding adjudication of guilt from which appellant brings this appeal.
"Appellant contends that the trial court erred in denying his motion to suppress evidence because the initial encounter, between the arresting officer and himself, which led to his arrest and search *12 violated the requirements of § 901.151, Fla.Stat., F.S.A., and constituted an unlawful invasion of his constitutional rights. Also, appellant contends, assuming arguendo, that the initial encounter was lawful, that the subsequent search and discovery of the contraband was an unreasonable and unconstitutional invasion of his rights.
"At the hearing on appellant's motion to suppress, the record reveals that only the arresting officer ... testified. His testimony was that the initial encounter with appellant occurred on August 29, 1975, at 1:00 A.M. when he approached appellant, who was sitting in an automobile parked in a parking lot next to a bar, for a routine check. Officer Leizze explained that he had approached appellant because there was a high rate of narcotics used in the area and a number of stolen vehicles had been dropped off in the parking lot. Officer Leizze then asked appellant for his identification and car registration. Upon receipt of his identification, Officer Leizze gave it to another officer for a records check. The records check revealed that a bench warrant had been issued for appellant. After Officer Leizze learned of the bench warrant, he asked appellant to get out of the car. As appellant complied, the officers asked him to turn around and put his hands on top of the car. Officer Leizze then searched appellant and advised him he was under arrest on the bench warrant. During the course of searching appellant, Officer Leizze, while kneeling down searching appellant's legs, observed a glass and a gun under the front seat of the automobile. The glass contained cannabis.
"The basic question for our determination is whether or not the trial court erred in denying appellant's motion to suppress.
"The trial court's ruling on the motion to suppress comes to this court with a presumption of correctness and, in testing the accuracy of the trial court's conclusions, we should interpret the evidence and all reasonable inferences and deductions capable of being drawn therefrom in a light most favorable to sustain these conclusions. Rodriquez v. State, Fla. App.1966, 189 So.2d 656, and Savage v. State, Fla.App.1963, 156 So.2d 566.
"With this standard in mind, we hold that the arrest of the appellant was valid under the outstanding bench warrant. See Murphy v. State, Fla.App.1971, 252 So.2d 261, and §§ 901.15(4) and 901.16, Fla.Stat., F.S.A. Further, the search of the appellant was reasonable and the seizure of the gun and the glass containing cannabis, which fell in the plain view of the arresting officer who had a right to be in the position to have that view, was also reasonable and the evidence obtained thereby was properly admitted into evidence. State v. Flores, Fla.App. 1974, 305 So.2d 292 and § 901.21, Fla. Stat., F.S.A. It is also our view that the reasonableness of the search and seizure after arrest was not affected by the fact that the original stopping of appellant may have been without probable cause. There is no testimony that appellant did anything other than to voluntarily cooperate with Officer Leizze and voluntarily provide the requested identification. State v. Foust, Fla.App.1972, 262 So.2d 686, and see State v. Ecker, Fla.1975, 311 So.2d 104, and City of Miami v. Aronovitz, Fla.1959, 114 So.2d 784. Officer Leizze's initial encounter of appellant was not an unlawful invasion of his constitutional rights."
We are of the opinion that Issue IIa should be determined adversely to appellant.

IIb.
This particular issue is thus captioned in appellant's brief:
"Appellant's arrest was illegal on the additional grounds that Officer Miller arrested him on pretextual grounds for the sole purpose of obtaining his fingerprints and photographs."
We believe that the Florida Supreme Court has previously determined this issue adversely to the contention of appellant. We refer to the case of State v. Gustafson, 258 So.2d 1 (Fla.1972), which held in reversing *13 the opinion of the District Court of Appeals, 243 So.2d 615 (1971) that a search which reasonably ensues after a legal arrest is proper, without regard to whether there is, a nexus between the offense in question and the object sought. The Florida Supreme Court stated at 258 So.2d 4:
"The district court describes its own position as being: `This more restrictive interpretation of the proper scope of a search incident to arrest' and introduces the new and narrow test that:
"`There must be a nexus between the offense and the object sought for a search conducted in connection with an arrest to be truly incident to it.'
"We cannot condone this radical departure from established, reasonable standards. We adhere to the former decisions of this state on the subject earlier recited."

IIc.
Appellant argues as to this issue that "Appellant's fingerprints and photographs should have been suppressed as fruits of the illegal and unconstitutional arrest."
As we have just held herein that there was no illegal and unconstitutional arrest, it follows that we should hold that this particular issue of appellant is not well taken.

III.
The caption of this particular issue is in brief of counsel for appellant as follows:
"THE ADMISSION INTO EVIDENCE OF A LIST SEIZED DURING EXECUTION OF THE SEARCH WARRANT HEREIN VIOLATED APPELLANT'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS."
The first paragraph of the argument in brief of counsel for appellant in support of this particular issue is as follows:
"Officer Miller obtained a search warrant for Appellant's residence and executed it on December 5, 1980, seizing the list or cost breakdown later introduced as State's Exhibit 40. (R. 140-142, 168). (Def.Ex. no. 3-voir dire). Though Miller prepared a return in addition to that attached to the search warrant, neither return made mention of the list. (R. 169). Significantly, the additional return prepared by Miller listed the same items, but designated them as having been in `plain view.' (R. 146). Miller could not recall why he failed to note the list on either return. (R. 169). Appellant will demonstrate the omission of the list was a violation of his Fourth and Fourteenth Amendment rights regardless of the analysis used."
It is not necessary for us to itemize the contents of the list, as appellant's counsel makes it clear that this particular issue is directed at items that tended to connect appellant with the crime of which he had been charged by indictment and for which he was tried and convicted. We believe that the position taken by appellant as to this issue is not in accordance with the established law as set forth in the Florida case we have cited hereinabove as to another point, State v. Gustafson, 258 So.2d 1, from which we now quote, at 258 So.2d 3, as follows:
"It has been the holding of the authorities through the years that once a proper arrest is made, and the defendant is in custody that a reasonable search may then proceed and if evidence be then discovered reflecting that a crime has been committed or is being committed, the evidence is proper and admissible. This has included contraband upon search of a vehicle on probable cause (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)); search of the person and immediate surroundings as an incident to arrest (Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)); and the `plain sight' exception of property which is apparent to the officer after reasonable cause for stopping the defendant (Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927)); (State v. Ashby, 245 So.2d 225 (Fla.1971))."
We determine this particular issue also adversely to appellant.

*14 IV.
The caption of this issue is thus stated in brief of counsel for appellant:
"APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BY THE ADMISSION OF A DOCUMENT AND TESTIMONY UNRELATED TO ANY ELEMENT OF THE CRIME WITH WHICH HE WAS CHARGED."
Counsel for appellant divides this particular issue into two parts that are lettered a and b. As to division a, appellant's counsel contends, "The passenger name list of Republic Airline Flight 234 was improperly admitted as a business records exception to the hearsay rule." Counsel for appellant further state in their brief on appeal the following:
"Lonnie Turner, Customer Service Manager of Republic Service Airlines in Birmingham, testified for the State, attempting to identify and authenticate a passenger list (St. Ex. No. 36) as a business record of the airline. (R. 470-479). Turner recognized the document as a passenger name list from a flight from Fort Lauderdale, but he was not the custodian of the list. (R. 471-72). In fact, Turner, who had not previously seen the list, did not know how, when or where the list had been obtained. Additionally, the list was not `under [his] care, custody and control,' nor `kept in the regular course of business under [his] care, custody and control.' (R. 476). Turner had no personal knowledge as to the record keeping practices of the airlines; his knowledge was limited to his `beliefs' and what's usually happened. (R. 476). Turner's knowledge was not adequate to authenticate the document as a business records exception to the hearsay rule, and the document should not have been submitted. C. Gamble, McElroy's Alabama Evidence, § 254.01(3) (3rd Ed. 1977). See also Pierce v. State, 42 Ala. App. 53, 56, 151 So.2d 793 (1963). The admission of that list which was not probative of any element of the crime charged, as an exception to the hearsay rule resulted in the violation of Appellant's Fourteenth Amendment rights to due process and a fair trial, and thus his conviction must be reversed."
The response as to this particular issue in brief of counsel for appellee is as follows:
"Lonnie Turner, Customer Service Manager of Republic Airline in Birmingham, Alabama, testified that he recognized State's Exhibit 36 as a passenger list for Flight 234 for the 14th of October out of Fort Lauderdale, Florida. (R. 473, 478) Turner stated that such a list is drawn up in the ordinary course of business for the airline every day for every flight. (R. 473). Turner further stated that once the persons who boarded the flight have been checked off the list the list is then kept on file for a year at the local office in the ordinary course of business. (R. 473).
"Under Alabama law, testimony by any witness, not necessarily the custodian of the record, that the document now exhibited to him is a record of the business; that he knows the standard operating procedure used in the business of making the records of the kind now exhibited to him; and that it was a regular practice of the business to make records of that kind and to make them at the time of the then recorded, is a sufficient authentication of the record to require its admittance in evidence. C. Gamble, McElroy's Alabama Evidence, § 254.01(3) (3rd Ed. 1977); Coleman v. State, 423 So.2d 276 (1982). The State submits that based on the testimony of Mr. Turner, the passenger list was properly authenticated under the aforementioned authorities and the list was properly admitted into evidence."
As to this particular issue, we are in agreement with counsel for appellee that the trial court was not in error in overruling defendant's objection to the introduction into evidence by the State of State's Exhibit 36 as a passenger list for Flight 234 for the 14th of October out of Fort Lauderdale, Florida. As neither party has endeavored to set forth the implications and complications involved as to the materiality of such evidence, we will not endeavor to do so, but we think it should be stated *15 that the "passenger name list" designated as "St. Ex. No. 36" contained the name of George Jones, and there was evidence tending to show such person was actually Geary Herber Jones, the appellant.

IVb.
By this particular issue, appellant contends that the trial court was in error in permitting the State to show by witness William Hogan that on the afternoon of October 14, 1980, he saw an airplane that he identified as the same kind of airplane that landed at Birmingham Municipal Airport November 24, 1980, as stated in the first part of this opinion. According to the witness, the plane at the time was at the Leesburg Airport, approximately forty to fifty miles north of Orlando. Some of his testimony in pertinent part was as follows:
"Q. Did you ever go up to where the airplane was parked there in front of the hangar?
"A. Later I did, yes, sir.
"Q. Okay. How much later was it before you went up there?
"A. Probably an hour or an hour and a half.
"Q. Okay, sir. When you went up there where up there were there any people up there found in the vicinity of the airplane?
"A. There were people in and around the aircraft continuously because they were doing some sort of work on the aircraft.
"Q. Okay. Did you have an occasion to see some people in the vicinity of the airplane when you were up there and participated in a conversation up there at the airplane?
"A. I saw there was four people at one time, and one of the mechanics left and went to do something else. Then there were three people there. And just continually moving in and out away from around the aircraft.
"Q. Okay, sir. Do you see anyone of those people that were there at that time in the courtroom?
"A. Yes, sir.
"Q. Would you point to him, please, sir?
"A. This gentleman sitting right here, sir (indicating).
"MR. NEIL [Assistant District Attorney]: Let the record reflect that he is pointing to the defendant, Geary Herber Jones.
"Q. Now, at the time youwas that the first occasion or the first time you had seen Mr. Jones there near the aircraft?
"A. That is the only time that I've ever seen Mr. Jones except in this courtroom.
"Q. Okay, sir. Now, when you saw Mr. Jones there and these other people that you've described, how close were y'all to the airplane at that time?
"A. At one point in the time I was probably within ten to twelve, fourteen feet of the aircraft.
"Q. Okay, sir. Could you describe Mr. Jones' appearance on that date, please, sir?
"A. Yes, sir. He was wearing casual clothing. His hair was sort of curly, a little longer than what it is now. And he had a mustache and gave the appearance of needing a shave.
"Q. Okay, sir. Officer Hogan, I want to show you State's Exhibit 38 that's in evidence and ask you if you see Mr. Jones' photograph anywhere in there?
"A. Yes, sir.
"Q. Which photograph, which number is the photograph?
"A. No. 3.
"Q. Is that the way Mr. Jones looked substantially at that time?
"A. Yes, sir.
"Q. Was there someone else there besides you and Mr. Jones at that time near the aircraft?
"A. I was not with Mr. Jones. We were in the same area together. And there was another gentleman who was of some smaller stature.
Mr. Jones was, and there were one or two of the mechanics in and around the aircraft, Lucky Uridell was there and also myself. And, you know, people moving in and out. It's a normal place of business.
"Q. Yes, sir, I understand. Could you describe this other individual you said *16 was somewhat smaller than Mr. Jones, what he looked like?
"A. He was about in my opinion five six, five foot seven, not what you call chubby, but muscular, well developed. And sort of dark hair. But he was a good bit smaller than what Mr. Jones was.
"Q. Do you have a judgment as to how much this other individual may have weighed?
"A. I would take a guess between 150 and 160 pounds.
"Q. Okay, sir. While you were up there and these other people were there did you have an occasion to hear any conversation between Mr. Jones and the other man you've described or any of the mechanics that were there or the other personnel you've described?
"A. I heard the comment being made [by] one of the mechanics to the effect that they were having trouble fixing the equipment on the aircraft because of its being so old."
The testimony of Deputy Sheriff Hogan continued at great length, both on direct and on cross-examination, but we think we have quoted enough of it to pass upon the contention made by counsel for appellant in the last issue presented by appellant, wherein it is said that "the testimony of Hogan was inadmissible to prove the identity of the defendant" and also that the "admission of Hogan's testimony served only to show bad character or his inclination to commit the type of crime with which he was charged in violation of the `general exclusionary rule' preventing such an introduction, due to the `belief that the prejudicial effect of prior crimes will far outweigh any probative value' to be gained."
We are of the opinion that this particular issue presented by appellant is not well taken, inasmuch as the testimony of Officer Hogan did not, as appellant's counsel contends, serve "only to show bad character or his [the appellant's] inclination to commit the type of crime with which he was charged" but it also tended to show that defendant-appellant at the particular time was in the process of committing a phase of the identical crime of which he was charged and for which he was being tried, trafficking in marijuana, by possessing an extremely large amount of marijuana and moving it from place to place in an airplane.
We conclude by stating that the appellant's final issue, as well as appellant's other issues, should be determined adversely to appellant.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.

ON APPLICATION FOR REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
Each of the four contentions of brief of counsel for appellant in support of the application for rehearing consists almost exclusively of a verbatim repetition of a contention contained in brief of counsel for appellant and discussed in the opinion of this Court on original submission of the case. The only additional authority cited by counsel of appellant is Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), in which the Supreme Court held that, in the absence of exigent circumstances, a warrantless nighttime entry into the home of an individual to arrest him for a civil, non-jailable traffic offense is prohibited by the special protection afforded the individual in his home by the Fourth Amendment to the Constitution of the United States.
The majority opinion in Welsh v. Wisconsin, relied upon by counsel for appellant in his brief in support of the application for rehearing is based on facts that are in marked contrast instead of similarity with the facts in the instant case. In the cited *17 case, the search and seizure determined to be unreasonable was the "nighttime entry into the petitioner's home to arrest him for violation of a civil traffic offense." Although a proceeding in the instant case was instituted against the appellant in which he was charged with a traffic offense, the search and seizure of his residence and the arrest of defendant at his residence were in connection with the felony charge of trafficking in cannabis. As to such a charge, the majority opinion in Welsh v. Wisconsin is not applicable.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
All the Judges concur.
NOTES
[*] Reporter's note: See prior proceedings at 444 So.2d 888-91; in those proceedings this defendant's name was spelled "Geary Heber Jones."
[1] The quoted statement, however, is as to the test to be applied by the jurynot the test as to whether the issue should be submitted to the jury, which requires only that there be substantial evidence of such knowledge by the defendant.