A jury found defendant (appellant) "guilty of felony possession of marijuana." The court fixed his punishment at imprisonment for nine years and sentenced him accordingly
The defendant pleaded not guilty, which he had the right to do even though promptly after the State had proved his guilt of possession of marijuana and had rested its case, defendant took the stand in his defense and freely admitted possession of "a little over a pound of marijuana," but in doing so he stoutly claimed that he bought and possessed it exclusively for his own personal use. The contested issue between the parties then became whether he was guilty of a felony or, on the other hand, a misdemeanor, in accordance with Code of Alabama 1975, §20-2-70 (a), which provides "that any person who possesses any marihuana for his personal use only is guilty of a misdemeanor."
A principal insistence on error by appellant is directed to the action of the trial court in permitting evidence and argument by the State relative to some LSD that was found by officers in the home of defendant and his wife, while the officers were proceeding under a search warrant of the residence of the couple while the defendant was not at home
The defendant had testified extensively on direct examination and on cross-examination that he had been a marijuana smoker for a long time, that he had recently purchased marijuana from a person whom he named by paying him $350.00 for it. He said that when he bought it it was "all in one sack," which he at first put in a closet in his home and thereafter put it in four separate bags and placed them where they were found by the officers in making the search. He said that he had in the meantime smoked some of the marijuana
It would unduly lengthen this opinion to quote all of the transcript pertinent to the principal issue between the parties, but that part of it that primarily sets forth the objections of the parties and the rulings of the court as to the admissibility of evidence that was found in the home of defendant and his wife is as follows, all occurring on cross-examination of defendant:
 "Q. Now, as a matter of fact, you sold marijuana and LSD, too, haven't you?
"A. No, sir, I haven't
"Q. You've had LSD in your house before, haven't you?
"A. Have I ever used LSD?
"Q. You've had LSD in your house?
"A. Have I ever had it in my house?
"Q. Yes, sir. That's the question
"A. Yes, sir, I have
 "Q. As a matter of fact, on this occasion you had about 80 or 90 hits of it, didn't you?
 "MR. SMITH: We object to all of this, Your Honor, as being immaterial and not germane to the question before this Jury
"THE COURT: Overrule your objection *Page 1031 
 "Q. Now, you say you didn't intend to sell that marijuana and it was for your personal use, but what about this LSD? Was that for your personal use?
"A. Yes, sir, if I wanted it
 "Q. Okay. You've got 80 or 90 hits of LSD in your house and you're telling this Court that that's for your own personal use —
 "MR. SMITH: Your Honor, we are going to object again, and let me take up my grounds over here outside the presence of the Jury
 "THE COURT: Will the Jury step into the Jury Room, please?
 "(WHEREUPON, the Jury retired to the Jury Room, and the following occurred:)
 "MR. SMITH: Your Honor, number one this man is not charged with LSD. Number two it was not found in his house. It was found in his wife's purse
"THE COURT: Where was her purse?
"MR. SMITH: The reason for pursuing this —
"THE COURT: Where was her purse?
 "MR. SMITH: He wasn't there in the house at the time But the purpose of this is to inflame the Jury over there so they can try to get a felony conviction for marijuana. I think if this man wasn't charged with it, I think somebody had pled guilty to it, and when he's talking about it's in the house, and all, I think it's a little different. It could have been outside the house and brought in the house some other time
 "THE COURT: The question he asked him, had he been in the possession of LSD?
 "MR. SMITH: No, I think he said it was in his house, not that he was in possession of it
"THE COURT: Didn't you say possession, Mr. Bell?
"MR. BELL: Judge —
"THE COURT: And didn't you say yes?
 "THE WITNESS: No, sir, I hadn't been in possession of it
 "THE COURT: Well, that may be what you are saying now, but I think a while ago you said you were in possession. That's why I let it go in
 "THE WITNESS: He asked me was it in my house. That's what he asked me
 "MR. BELL: Judge, if we could just have Mrs. May to check back —
"THE COURT: All right
 "(WHEREUPON, after the Court and Counsel listened to the tape of the witness' testimony, the following occurred:)
 "THE COURT: The evidence is that you didn't have any other evidence, that it was in his wife's purse. Is that correct?
 "MR. BELL: And the purse was in the house. Judge, it's the State's position that the witness has admitted of having the LSD in the house, and he's testified without objection that that LSD was for his own personal use
 "Now, it's the State's contention that we have a right to go into the fact now with this witness and find out that it was about 80 or 90 hits of LSD and then ask him how he was going to use all of that himself just like on the marijuana
 "THE COURT: You mean by virtue of the fact that he said it was for his personal use?
"MR. BELL: Yes, sir
 "MR. SMITH: No, sir, I think — let's go back and listen to it again. He said no, the LSD, he'd use it if he wanted to
 "THE COURT: Well, all right, let's play it back again then
 (WHEREUPON, the Court and the Counsel listened again to the witness' testimony.)
 "MR. SMITH: Now, Mr. Bell, got up there and said it was for his personal use. Now, he didn't say that. He said he'd use it if he wanted to. He didn't say that's for my personal use. The same way about the stuff being in the house. He said it was in the house, and the reason he knows it was in the house because his wife got arrested for it, and I think she pled guilty to it today, but knowing it was in the house don't make any guilty part on him if he determines it after she's been arrested. Like I say, this is just for Mr. Bell to inflame the Jury to try to get *Page 1032 
a conviction in a case where he doesn't have it, and LSD doesn't have anything to do with him."
Immediately thereafter, there was a colloquy among the trial judge and counsel for the respective parties on the subject, consisting of about five transcript pages, then a voir dire interrogation of defendant by his counsel, after which the following occurred:
"MR. SMITH: That's all
 "Now, Your Honor, I think it would go out unless he can bring in knowledge and all of that stuff
"MR. BELL: May I ask him — Oh, I'm sorry
"THE COURT: Go ahead and ask him some questions
"By Mr. Bell:
 "Q. What did you mean in your previous testimony when I asked you about that LSD and you said you could —
 "THE COURT: Well, this would be cross-examination. I am going to overrule your objection because I think I am right. Have the Jury come out
 "(WHEREUPON, the Jury returned to the Courtroom and the following occurred:)"
Thereupon, a lengthy cross-examination of defendant continued in which he testified, inter alia:
 "Q. And I believe that LSD was found in your wife's purse, was it not?
A. That's what he said
 "Q. And is it your testimony here in court today that you had no earthly idea that there was LSD, eighty or ninety hits of LSD in your wife's purse prior to Mr Brown telling you about it?
"A. I didn't know she had it. No, sir I didn't
 "Q. So, it's your testimony here under oath that you didn't know it was in your house, in your wife's purse, or anywhere else in your house when you left for work that Monday morning?
"A. Yes, sir, that's true
 "Q. Okay. You recall me asking you whether or not that LSD was for your personal use, do you not?
"A. Yes, sir
"Q. And what was your response to that?
"A. Was it for my personal use?
"Q. Yes, sir
 "A. When you asked me the question you referred it to me as if it was in my home was it for my personal use, and I said if I had wanted it to be
 "Q. If you had wanted it to, it could have been for you?
 "A. If I had wanted it to be it could have been if I had known it was in there
 "Q. Oh, but you didn't add that, if I had known it was in there, back then, did you?
"A. No, sir, I didn't, not to you
"Q. Why didn't you?
 "A. Because the nature of the question and the nature of the way you questioning me at that time
 "Q. And it just didn't occur to you to tell anybody you didn't know it was in there?
"A. No, sir, it didn't
"Q. Does your wife deal with drugs?
"A. Does my wife do what?
"Q. Deal with drugs?
"A. Not to my knowledge
"Q. Well, you would know about it if she did?
 "A. She has never done it that I know of. We've been together for two years
"Q. And you didn't know she had LSD?
"A. No, I didn't
 "Q. I will ask you this. After they searched your house, you left town
"A. Yes, sir, I did."
During the opening argument to the jury of counsel for the State, the following occurred:
 "MR. BELL: Now, another thing I find about the defendant, about his testimony, and you've got to believe him if you want to find him guilty of a misdemeanor, you've got to believe him and he says his wife has quit smoking marijuana, and I think that's great if she has, but if she has quit smoking marijuana, ladies and gentlemen, what is she doing with LSD, 80 or 90 hits of LSD, in her purse — *Page 1033 
 "MR. SMITH: We object to this line of argument, Your Honor. There is no evidence in this case of any LSD being shown to this jury or anything else
"THE COURT: Overruled the objection."
During the rebuttal of counsel for the State, the following occurred:
 "MR. BELL: Let's look at this other drug that was in the house. He said he didn't know it was there. It was in his wife's purse. He says she doesn't use marijuana but it just happens to be in her purse Ladies and gentlemen, the testimony was that there were 80 or 90 hits of LSD and I ask you ladies —
 "MR. SMITH: Your Honor, I object. There was no evidence there were 80 or 90 hits other than what Mr Bell said
"MR. BELL: The defendant said it was 80 or 90
 "MR. SMITH: He did not. You asked him whether or not —
"THE COURT: I overrule your objection."
Counsel for both parties on appeal face squarely the issue whether the trial court committed prejudicial error in its rulings as to the injection by the State of evidence and argument relative to the LSD found in the purse of defendant's wife. As a supplement to the brief of his counsel on appeal (appointed by reason of appellant's indigency), appellant files a pro se brief, in which he argues at length that he "was not adequately represented at the trial level nor before this Court." Included in his argument as to the question of adequate representation by counsel on the trial, appellant says in hispro se brief:
 "The next blunder attributal [sic] to trial counsel relates to his opening up a field of interrogation that allowed the State too much latitude on cross-examination. He had asked me on direct examination if I had ever sold any marijuana and I had answered in the negative (R., 63). Of course, the State could have shown a sale of prior disposition to sell as being evidence of possession with intent to do other than use it for myself but they would have been required to justify such line of questioning unless it related to the disposal of the marijuana in evidence. However, after trial counsel opened the gates, the State was entitled to full cross-examination on the issue and they availed themselves of that opportunity (R., 79 80). I readily admit that this blunder may be due solely to poor judgment on the part of trial counsel and not of any great importance when viewed alone but, of great significance when considered along with the more obvious failures to patent, basic and fundamental rights
 "Next the State asked if I had ever had LSD in my house and trial counsel did not object (R., 82). His objection only came after the State's attorney had asked me if I had any in my house on the occasion of my arrest in this case. . . ."
By the statement just quoted in appellant's pro se brief, appellant has made a concession against his interest that is not even claimed in appellee's brief. Furthermore, our examination of the transcript convinces us that no such claim was made by the State on the trial and that the trial court at no time based its rulings as to the evidence elicited, or argument made by the State, as to the LSD, on the ground that defendant's counsel had not made proper and timely objections or on the ground that by prior questions he had opened the door for such evidence and for argument based thereon. We think it inappropriate at this time to discuss other criticisms in thepro se brief of the representation of him by his counsel in the trial court, as to which he identified an attorney, who is not a resident of Alabama and who does not regularly practice law in Alabama, as one whom he, or someone acting in appellant's behalf, has consulted in regard to representing him on appeal
Appellant's counsel has not cited a case that strongly supports his contention that the trial court erred "in failing to sustain defendant's objection to evidence of drugs found in his wife's possession" and in "failing to sustain defendant's objection to the District Attorney's closing argument wherein reference was made to" such *Page 1034 
drugs, and we have found none. On the other hand, in support of its position, appellee cites Brantley v. State, 294 Ala. 344,317 So.2d 345 (1975) and Smith v. State, Ala.Cr.App.,351 So.2d 668 (1977), cert. denied, 351 So.2d 675, which hold that on the trial of a case for the possession of marijuana, evidence of other drugs and paraphernalia seized in the search of the defendant's house, but not encompassed in the charge against defendant, is admissible. To these we add Green v. State, Ala.Cr.App., 389 So.2d 537, 540 (1980), cert. denied,389 So.2d 541 and Mitchum v. State, Ala.Cr.App., 384 So.2d 1193, 1203
(1980), cert. denied, 384 So.2d 1205. These cases, withBrantley as the recognized progenitor, represent the now established law in Alabama on the subject, and unless the instant case is distinguishable from them, we must find the issue in favor of appellee. Whatever the result, we deem a comparison with Brantley sufficient
The fact that the opinion in Brantley was by a divided court (five-four) underscores the closeness of the question and emphasizes the importance of strict adherence to what was held therein and of not extending the boundary thereof. As to this, there is special significance in the second paragraph of the opinion in Brantley as follows:
 "The only question presented is whether the admission of the LSD and cocaine into evidence was prejudicial error. We hold that it was not, under the facts and circumstances of this case."
In the concluding paragraph of the opinion in Brantley we find:
 "Brantley was charged with the offense of possessing marijuana, a felony. Possession of marijuana for personal use is a misdemeanor. The fact that Brantley possessed other drugs in the trailer where the marijuana was found and the fact that he had scales and a pipe would show the `complete story,' and would be relevant on the issue on whether Brantley possessed marijuana with an intent other than for his personal use. The admission of the other drugs by the trial court was not erroneous in this case. . . ."
It is clear that in Brantley evidence that was under consideration constituted substantial evidence that appellant "possessed other drugs [LSD and Cocaine] in the trailer where the marijuana was found." Brantley is authority for holding that substantial evidence that defendant was in possession of LSD in his home would have been admissible against him. No such evidence was presented herein, and apparently no attempt to present such evidence was made except on cross-examination of the defendant, which failed in its obvious purpose, but which succeeded, we think, in placing defendant in the unenviable light of attempting "to hide behind a woman's skirt."
Notwithstanding the absence of any evidence of defendant's possession of LSD, the injury to defendant was worsened by argument of State's counsel that defendant's wife had "eighty or ninety hits of LSD, in her purse," and that "the testimony was that there were eighty or ninety hits of LSD and I ask you ladies — ___ . . . The Defendant said it was eighty or ninety."
We find nowhere in the transcript that defendant ever said that there were "eighty or ninety hits of LSD" in his wife's purse or elsewhere, although he was intensively cross-examined on the subject. We see room for disagreement between trial attorneys, and for misunderstanding on the part of the court, as to whether defendant ever testified expressly or implied that he had possession of the LSD found in the purse of his wife, which appears to have been largely caused by a misunderstanding as to what was implied by defendant's answers to some questions propounded by the State to him on cross-examination relative to the LSD found in his wife's purse
The disagreement became so definite that there was a replay of the tape of the court reporter as to what defendant had said on the point. There was doubtless included in the replay the following:
"Q. You've had LSD in your house before, haven't you?
"A. Have I ever used LSD?
"Q. You've had LSD in your house? *Page 1035 
"A. Have I ever had it in my house?
"Q. Yes, sir. That's the question
"A. Yes, sir, I have."
We can readily understand that generally little distinction is to be made between one's statement that he "had" something in his house and a statement by him that he "possessed" something in his house, as "have" and "possess" are generally synonymous Even in controlled substances cases the words can many times become synonymous, but one cannot be properly convicted of possession of a prohibited substance in the absence of his actual or constructive possession thereof, coupled with knowledge of its presence. Roberts v. State, Ala.Cr.App.,349 So.2d 89, cert. denied, 349 So.2d 94 (1977); Scaloni v. State, Ala.Cr.App., 383 So.2d 586 (1980)
There may have been good ground for disbelieving the defendant's testimony that he had no knowledge of the presence of LSD in his house prior to the discovery thereof in his wife's purse by officers conducting a search of the premises pursuant to a search warrant, at a time when his wife was present but he was not. However, his testimony on voir dire out of the presence of the jury as follows is undisputed:
 "Q. Mr. Casey, when was the first time you knew anything about any LSD being in your house?
"A. About 8:30 May 21st
 "Q. Who informed you about the LSD or whatever that was in the house?
 "A. Mr. Brown [one of the officers with a search warrant]
 "Q. Did you know that your wife had any LSD in your house prior to Mr. Brown informing you of that fact?
"A. Not at that time, I didn't
". .
 "Q. And did you ever have that LSD in your possession or not?
"A. No, not in my possession
 "Q. When you saw it or heard about it, who had possession of it?
 "A. Mr. Brown already had possession of it. He told me it came out of my wife's purse
 "Q. And that's how you knew about it being in your wife's purse?
"A. Yes, sir."
Appellant's criticism of his trial counsel to the effect that he opened the door to the cross-examination of him by State's counsel as to the LSD, by asking him whether he had ever sold any marijuana is not justified. Although counsel was perhaps grasping at straws by so interrogating defendant, this was not because of any fault of counsel but by reason of the facts of the case, according to defendant's testimony. The record shows that when the State rested, counsel for defendant moved "to exclude the State's evidence as to felony possession of marijuana," which the court overruled. At that time, there was no evidence that the marijuana found in the house was for the defendant's personal use only. The quantity of it constituted strong evidence to the contrary. Furthermore, defendant's counsel was faced with a proposition of law that the burden of presenting evidence that the marijuana possessed was for hispersonal use only was upon defendant. Barnett v. State, Ala.Cr.App., 373 So.2d 1226, cert. denied, Ex parte State,373 So.2d 1230 (1979); Lee v. State, Ala.Cr.App., 350 So.2d 743
(1977); Roberts v. State, supra.
The questions asked on direct examination were properly calculated to meet the burden of law cast upon defendant Incredible though it may be to some that so much marijuana was exclusively for defendant's own use, defendant stood up well under severe cross-examination by State's counsel on that particular point, by his candor as to confessing his addiction to marijuana, to his longtime gross use of it, and to the economy involved in buying it in a large amount. Furthermore, he entirely exonerated his wife of any connection with the marijuana. Notwithstanding his addiction to it, the evidence was undisputed, as testified by him, that he operated a barber shop, which was open Tuesday through Saturday for regular hours, eight 'til five, and that he worked "there every day" prior to selling *Page 1036 
out and leaving Alabama a few days after the incident made the basis of the prosecution. He was brought back to Alabama on a charge of the possession of the marijuana. He was never prosecuted for possession of the LSD
Whether, in the absence of references to the LSD that was found in the purse of defendant's wife, the jury would have found defendant guilty of a misdemeanor, instead of a felony, is not for us to say. It was expressly given that right in the court's instructions to the jury. That the cross-examination of the defendant as to the LSD was injurious to him is not questioned on appeal. Although defendant did not object to every question on the point, sufficient objections were made and overruled by the court to make the admission of the evidence reviewable. Moreover, there were specific objections to the argument of counsel for the State to the effect that there were "eighty or ninety hits of LSD" in the purse of defendant's wife, which was unsupported by any evidence in the case. The action of the court in overruling such objections, as well as its action in overruling objections to questions propounded to defendant on cross-examination, constituted error prejudicial to defendant. By reason thereof, the judgment of the trial court should be reversed and the cause remanded
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court
REVERSED AND REMANDED
HARRIS, P.J., and TYSON, BOOKOUT and BOWEN, JJ., concur
DeCARLO, J., dissents