312 So.2d 604

**Douglas Earl CORBIN**

**v.**

**STATE.**

**4 Div. 299.**

Court of Criminal Appeals of Alabama.

May 6, 1975.

J. Ronald Storey, Dothan, for appellant.

**34**

William J. Baxley, Atty. Gen., and Eric A. Bowen, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Possession of marihuana, *not for personal use*: sentence, four years in the penitentiary. Act No. 1407, September 16, 1971, § 401(a).

### I

In the trial below appellant moved to exclude the State's proof. We quote from Coffey v. State, 31 Ala.App. 120, 12 So.2d 863:

"We have carefully read the entire evidence, sitting en banc and have studiously considered the whole case. In our view, there was an entire absence of substantial evidence to justify the verdict of guilt. * * * Therefore, we do not think the conviction should be allowed to stand on the evidence adduced."

### II

Inasmuch as the State undertook to prove a negative,[1] i. e., that Corbin's possession was not for his personal use, it is axiomatic that some indicia of his intent would have come out in the prosecution's proof to support this averment.

The only facet of the State's evidence from which it could be inferred that the defendant was in possession of marihuana was the presence of three marihuana cigarettes in a chest in a bedroom in which the defendant was asleep at 5:30 in the afternoon. There was no other proof that the defendant occupied this bedroom.

Corbin's counsel in the Statement of Facts in brief says:

"* * * the officers found Berry standing in the yard. They entered the residence and found a person named Beasley lying on a bed asleep in the middle bedroom, and found the Appellant lying on a double bed asleep in the 'west rear' or 'back' bedroom of the house. The Appellant was dressed in work clothes.

"Officer McCord testified that there were approximately four bedrooms in the house. All officers testified that in their opinion, based upon smell, at some time marihuana had been smoked in some portion of the house.

"McCord testified that he made a search of the room where Corbin was resting; there were clothes hanging in the closet and shorts and under shirts in a chest beside the bed. In the top left hand drawer of a dresser, which was also in such west rear bedroom, he found

---

1. It is not necessary for the State to undertake this, since the possession for personal use is a defensive matter under the Alabama Uniform Controlled Substances Act. See § 401(a), supra.
   However, here the State assumed the burden—by the very wording of the indictment—of proving that Corbin (a) possessed marihuana and (b) that he did not possess it for personal use.
   In Palmer v. State, 54 Ala.App. 707, 312 So. 2d 399 (Ms. March 18, 1975, 5 Div. 262) it is pointed out that § 407 of Act No. 1407, supra, does not apply to marihuana possession cases. *Garsed*, infra, contains obiter dictum which must be disregarded.

three rolled cigarettes which looked like marijuana.

"McCord went through a jacket which was lying on the floor and found a matchbox containing some loose green vegetable material. The jacket was on the floor between the dresser and the door, more or less behind the door, and the bed on which Corbin was resting was in the other corner, completely all the way across the room from where the jacket was found.

"The green vegetable material in the matchbox was later determined to contain 0.7 grams of marijuana, and the three rolled cigarettes were found to contain 2.39 grams of marijuana. There was no other marijuana found.

"The police officers testified that no attempt whatsoever was made to ascertain the name of the person in whose bedroom the marijuana was found. No attempt was made to ascertain the name of the person to whom the clothes in such bedroom belonged.

"Upon the finding of the marijuana in the room in which Corbin was resting, a warrant charging unlawful possession of marijuana was obtained for the arrest of Beasley and Corbin. According to the testimony of the officers, such warrant was issued against the three since 'they were all three there', and it was presumed 'they were all living there.'

"The testimony of Appellant's witnesses, George Berry and Jack Winston Beasley, Jr., revealed certain additional information.

"Corbin, Berry, and Beasley were employed by Daniels Construction Company at the Nuclear Plant. Beasley did not live at Berry's residence at 501 North Herring Street. The Appellant had recently started to work with Daniels, was riding to and from work with Berry, and had been staying with Berry at 501 North Herring Street for approximately three or four days.

"Berry testified that the Appellant used the front bedroom of the house and that the west rear bedroom of the house, the one in which the marijuana was found, was Berry's bedroom.

"Beasley testified that, on the day in question, he and the Appellant got off work at about a quarter to 4:00 p. m., and he drove the Appellant to the residence. Beasley intended to help Berry prepare to move since Berry was moving to Mississippi. When Beasley and the Appellant got [there] Berry had not as of yet arrived home from work, so Beasley and the Appellant decided to take a nap until Berry got home. Beasley's next recollection was of being awakened by the police officers.

"Berry testified that when he arrived at the house, sometime between 5:00 and 6:00 p. m., Beasley was asleep in the middle bedroom, and Corbin was asleep in Berry's bedroom. Berry did not awaken or talk to either one of them. Berry further testified that the three marijuana cigarettes found in the top left-hand drawer of his dresser were his, and that the jacket in which the matchbox was found was his, and also that the marijuana found in the matchbox was his.

"Berry testified that to his knowledge Corbin did not know of the physical presence of the marijuana which was in Berry's jacket and in Berry's room.

"Berry further stated as follows:

" 'Doug Corbin nor Winston Beasley neither one couldn't have known about the marijuana that was in my house and in my work coat either. There was no way. I was the only one that had any knowledge of that marijuana in that house, in that drawer.' "

The Attorney General in brief adopts the appellant's Statement of Facts, but adds:

"Detective J. R. McCord testified that defendant told him that he had been staying at 501 North Herring Street [Dothan] for about two weeks. Marijuana smoke odor was very heavy through the entire house. Beasley and Defendant were the only two people in the house.

"George Berry [the renter of the house] took the stand and testified that he had not seen the defendant and Beasley on the afternoon of the search. He had not gone into the house, but was in the yard when the police drive up."

Corbin, in a reply brief, points out that Berry saw Corbin and Beasley asleep in the house.

In support of his contention of the evidence being insufficient cites: Parks v. State, 46 Ala.App. 722, 248 So.2d 761; Rueffert v. State, 46 Ala.App. 36, 237 So. 2d 520; Daniels v. State, 49 Ala.App. 654, 275 So.2d 169; Garsed v. State, 51 Ala. App. 622, 288 So.2d 161; Parks v. State, 46 Ala.App. 722, 248 So.2d 761; Radke v. State, 52 Ala.App. 397, 293 So.2d 312, certiorari denied, 292 Ala. 290, 293 So.2d 314; Deas v. State, 44 Ala.App. 472, 213 So.2d 412.

In *Rueffert*, 46 Ala.App. 36, 237 So.2d 520, our late Presiding Judge Price wrote as follows:

"The well established rule in cases involving possession of prohibited liquors is that where actual manucaption is not shown and constructive possession is relied upon, the state must show beyond a reasonable doubt, in addition to the constructive possession, that the accused knew of the presence of the prohibited beverages. Grimes v. State, 38 Ala.App. 94, 76 So.2d 684; Davis v. State, 40 Ala. App. 609, 119 So.2d 236. The rules of evidence in a prosecution for possession of marijuana are the same as those applicable in every other criminal case."

In *Lucy*, 46 Ala.App. 484, 243 So.2d 756, we were at pains to point out:

"No proof was made as to the size of the room. However, one officer testified (R. 42) as to finding match boxes which held marijuana by the television about six feet from the appellant. There were others in a paper bag on the floor. In the kitchen an officer described a smoking tobacco tin which held marijuana leaves. Marijuana leaves were found in appellant's pocketbook.

"In a chifforobe and in a dresser another officer found letters and papers bearing the appellant's name. This proof was relevant on the issue of whether or not the bedroom was appellant's and, consequently, her control of its contents."

We are not prepared to say that any given quantity of marihuana possessed marks a line between possession for personal use and possession for such other purpose as sale, barter or gift. Here we do not have even constructive possession.

In cases such as this the statement of the insufficiency of the evidence must in an appellate opinion somewhat partake of a conclusory nature since it is impossible in the need to compress our writing to be able to set forth all of the evidence, or the lack thereof, as contained in the trial transcript of testimony. In this case we indulge in such a conclusion and agree with the appellant's counsel that the judgment below should be reversed and the cause remanded for new trial.

Reversed and remanded for new trial.

All the Judges concur.