Appellant was convicted of robbery, and the jury fixed his punishment at ten years in the penitentiary. Throughout the trial proceedings in the Circuit Court of Coffee County, Alabama, he was represented by court-appointed counsel and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal but did not request that his sentence be suspended pending appeal. He expressly told the Court that he wanted to take a "working appeal." He was furnished a free transcript and trial counsel were appointed to represent him on appeal.
This is appellant's second appeal for this same offense. His first conviction was reversed by this Court in an opinion authored by Judge Bowen on March 29, 1977. Knight v. State, Ala.Cr.App., 346 So.2d 478. The reversal was grounded on an illegal arrest because the officer did not have probable cause to arrest Knight on an informer's unverified and uncorroborated tip. Certiorari was denied by the Supreme Court. 346 So.2d 483.
Prior to the retrial of this case appellant moved to dismiss the indictment on the same grounds made the basis for the reversal of Knight's first conviction. Absolutely no testimony was offered in support of the motion to dismiss the indictment. The Court overruled and denied the motion to dismiss the criminal action pending against him and the indictment upon which he was re-arraigned. The Court reserved a ruling on the motion to suppress the evidence until such time as evidence was sought to be introduced in violation of appellant's constitutional rights.
The evidence adduced by the State in appellant's second trial is not disputed. Appellant *Page 766 
did not testify or offer any evidence in his behalf.
Mr. Neal Carroll testified that he was the owner and operator of Neal's Fried Chicken on Geneva Highway in Enterprise, Alabama, and on the night of March 12, 1976, he was robbed by a black male at gunpoint. He stated that the robbery occurred a few minutes after 8:00 p.m.; that he normally closed at eight o'clock every night and that he had checked up the cash register and was waiting for the mop boy to finish mopping the place. He took $199.00 out of the cash register and put it in his wallet. He left some change and a check in the register. When the young boy finished mopping he paid him for his work and the boy left.
Mr. Carroll further testified that just before he was going to close and lock the place for the night he noticed a box of chicken on the drainboard and he got a pan and went to the ice machine to get ice to spread over the chicken. One pan of ice was not enough and he returned to the machine and got another pan of ice and was walking to the drainboard to spread the ice on the box of chicken. At this point he heard a noise at the door and a voice said, "Stop, don't move." He took another step and the voice said, "I said stop, don't move." The place was well lighted and Carroll turned and looked the man squarely in the face and saw the pistol pointed at him. He stated the man's face was immediately above the gun and the man cocked the pistol. Mr. Carroll made a positive in-court identification of appellant as the man who pointed the cocked pistol at him at close quarters in a well lighted place. The man patted down Mr. Carroll with the gun still pointed at him and the man reached his hand in Mr. Carroll's pocket and took the money and then took Mr. Carroll's wallet. The robber took $199.00 and a check from Mr. Carroll's pocket and he heard the man fumbling through his wallet which he then laid on the table. The bandit ordered Mr. Carroll to lie face down on the floor and he complied with this order. After Mr. Carroll was on the floor he turned his head to the side and the robber told him, "I said nose down," and Mr. Carroll put his nose on the floor and said, "Please don't hurt me." The bandit left by the rear door and Mr. Carroll stayed on the floor until he felt certain the man had gone.
Mr. Carroll was asked if there was any question in his mind as to who robbed him on that occasion and he replied, "Not at all, no, sir. I am one hundred percent sure or I wouldn't say it."
At this point the State rested and appellant moved to exclude all the State's evidence on the ground the State had failed to make out a prima facie case. Appellant also renewed all motions to dismiss the indictment and other motions on file.
The Court stated:
 "Motion to exclude the evidence denied. Motion to dismiss the indictment denied. Motion to drop charges denied. Motion to suppress the evidence, there having been none presented to suppress, is denied."
Appellant contends that this Court's reversal of his first conviction held that he could not be put to trial again on the same indictment. Knight v. State, supra. We do not agree. This Court did not hold that appellant could not be retried on the same indictment. We merely held that he was illegally arrested and for that reason alone reversed the case.
In the case of State v. Hughes, 2 Ala. 102, decided by the Supreme Court well over a century ago, it was held:
 "The reversal of the conviction of the prisoner, at a previous term of this Court, was not intended to operate so as to discharge him from a further trial for the same offense. The cause was then remanded for that purpose, and it is so said in the opinion of the Court. There was no necessity for preferring a new indictment; the one already found was unaffected by the judgment of reversal."
 Hughes, supra, was re-affirmed in Jeffries v. State, 40 Ala. 381, wherein the Court said:
 "We regard it as well established law in this state, that a prisoner may waive his *Page 767 
constitutional immunity against being a second time placed in jeopardy, and that he does make such waiver, when, by a proceeding instituted by himself, he procures a reversal of his conviction."
Reversal of a judgment and remanding of the cause restores both the State and the defendant to the condition in which they stood before the judgment was pronounced. Coleman v. State,20 Ala. App. 471, 102 So. 915.
A motion to dismiss an indictment on the ground that it was found upon illegal and incompetent evidence was properly overruled where no evidence was offered to sustain such allegation. Edson v. State, 134 Ala. 50, 32 So. 308.
We have carefully reviewed the entire record on this appeal for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.