LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence in a case in which a jury had found defendant guilty under an indictment charging that he did “unlawfully possess marijuana, a controlled substance, contrary to and in violation of the provisions of the Alabama Uniform Controlled Substances Act, in violation of Title 20-2-70 of the Code of Alabama, 1975.”
The principal issue raised by appellant is as to the admissibility of the evidence of the results of the search of defendant’s automobile, which, according to the undisputed evidence, including the testimony of a qualified “Crime Laboratory Analyst” experienced in chemical analyses, consisted of the following: “0.11 of a gram of marijuana found in the glove compartment of the automobile; 3.24 grams of marijuana contained in a penny match box found on or about the front seat of the automobile; 0.06 gram of marijuana contained in 2 partially smoked cigarettes and 1 ‘Joker’ brand cigarette papers also found in the automobile.”
The question as to the admissibility of the evidence arose during the testimony of Investigator Roy Tabb of the Covington *1294 County Sheriffs Department, who testified in pertinent part as follows:
“I was sitting on a location in Opp, on the look-out for a vehicle that we thought may have been involved in the previous case that I was working on, and the car occupied by two subjects passed me. The license plate was hanging off the back of it in an awkward angle like it had been just tacked on, and they were driving on the wrong side of the road.
“Q. You observed the license tag, as they were driving on the wrong side of the road, of this vehicle?
“A. Yes, ma’am.
“Q. And then what did you do?
“A. I pulled over behind them. They pulled into the yard on Cummings Street. I pulled in behind them with my blue light on.
“Q. And, then, what happened, please?
“A. I went to the car.
[[Image here]]
“Q. Alright, you proceeded to the car. Is that what your last statement was, Mr. Tabb?
“A. Yes.
“Q. And, when you got to the car, what did you observe, if anything?
“A. I observed the driver appeared to be concealing something under his hand between him and the passenger.
[[Image here]]
“Q. Did you observe anything else at that time?
“A. At that time I thought that they may have had a weapon, and I asked them to get out of the car.
“Q. You were looking for a weapon?
“A. I didn’t know what he had concealed, ma’am.
“THE COURT: I believe he said he asked them to get out of the car.
“Q. And, when they got out of the car, then what happened, please.
“A. I asked the driver to produce a driver’s license, and he could not.
“Q. Alright.
“MR. COLQUETT [Defendant’s attorney]: Could not?
“A. He said he didn’t have one. He was only driving the car as a favor to his friend, the car belonged to his friend that was with him [the appellant herein],
[[Image here]]
“Q. And, then, what happened after that?
“A. I looked into the passenger’s compartment where I saw his hand earlier, and while I was looking in there, I observed a burned hand-rolled cigarette butt laying on the floorboard.
“Q. Was that on the driver’s side or the passenger’s side?
“A. It was laying in a compartment of a container on the drive shaft hump between the two of them.
[[Image here]]
“Q. They had already stopped when you stopped, had they not?
“A. They stopped when I pulled in behind them, yes sir. I didn’t know that they lived there at that time, or if that was where they were going. It just happened that way.
“Q. It wasn’t a period of time after they stopped before you got out?
“A. No, sir.
“Q. You are as sure of that as you are the rest of your testimony?
“A. Yes sir.
“Q. And, you asked if you could look inside the car. Is that your words?
“A. That’s correct.
“Q. And, you were told to go ahead?
“A. Yes sir.
“Q. Is that your words?
“A. Yes sir.
“Q. Alright.
“A. I’m not quoting directly, but that was an inference.
“Q. Was that all that was said? That’s all you asked, if you could look inside the car?
“A. Yes.
“Q. And, who told you to go ahead?
“A. Mr. Taylor.”
All of the testimony quoted above was taken out of the presence of the jury at the *1295 request of the defendant, which was concluded as follows:
“RECROSS-EXAMINATION
“BY MR. COLQUETT [Defendant’s attorney]:
“Q. One further question, did you know for a fact that those roaches or cigarettes contained marijuana when you saw them?
“A. No sir. They appeared to be.
“MR. COLQUETT: That’s all, now, we move to exclude any testimony in regards to the search, anything that was found at the search or any statement that was made subsequent to it, by this defendant or any other person.
“THE COURT: Overruled.
“MR. COLQUETT: We accept [which we construe as except].
“(Whereupon court was recessed.)”
Soon thereafter, the same witness testified in the presence of the jury. A pertinent part of his testimony follows:
“Q. Then, what happened after you spoke with the driver?
“A. I looked in the car toward where I thought something was being concealed, and while doing so, with my flashlight, I could see a partially rolled, hand-rolled cigarette butt laying in the compartment on the hump between the two passengers of the car.
“Q. And, what did you do then?
“A. I then, looked further with my flashlight, and I saw another hand-rolled cigarette butt laying on the floorboard below the passenger’s seat, front seat.
“MR. COLQUETT: Now, if it please the Court, we move to exclude this entire testimony. They had no right to be looking in that automobile.
“THE COURT: Overruled.
“MR. COLQUETT: We accept [which we construe as except].
“THE COURT: You may proceed.
“Q. And it was on the side of the car which Mr. Taylor was sitting, the defendant here was sitting?
“A. Yes ma’am.
“Q. And, after you saw these two things, what did you do then?
“A. I advised both gentlemen of their rights. I read them their rights off of a meranda [which we construe as Miranda] card. I looked at them. They both appeared unsteady, eyes were bloodshot. I shined my light in their eyes and their pupils were dilated and didn’t react to the light. At that time, I asked them for permission to check inside the vehicle further.
“Q. And, were you given permission to look inside the vehicle further?
“A. Yes ma’am.
“Q. And, who gave you that permission?
“A. Mr. Taylor.
“Q. What did you do then?
“A. I looked into a casette tape carrying case, on the front seat, which was between the two of them. And inside I found a package of Joker cigarette rolling papers.
“MR. COLQUETT: We object.
“THE COURT: Overruled.
“MR. COLQUETT: We except.
“A. A small Diamond match box containing a quantity of what appeared to be a green leafy vegetable material, which appeared to be marijuana to me.
[[Image here]]
“Q. And, what else did you find?
“A. I then looked in the glove compartment of the automobile and found a quantity of seeds and stems and what appeared to be more marijuana debris.”
As a caption to, the principal contention in appellant’s brief, he states:
“When the State relies upon consent to justify a search and seizure of evidence to incriminate, the consent must be given under circumstances to justify a waiver of known rights. This is not a matter that can be presumed, but the State has the burden of proving that the consent or waiver was given voluntarily without inducement or coercion and with knowledge of the right to refuse the request to search. HENDERSON VS. STATE, 49 *1296 Ala.App. 275, 270 So.2d 822, and cases cited thereunder.”
Appellant is correct in citing Henderson v. State, in support of the quoted caption in his brief. However, it should be noted that it was not held in Henderson v. State that the facts therein were not sufficient to show that the search of the automobile involved was valid, and appellant does not seem to claim otherwise. It appears that he uses the quoted caption as a prelude to the second issue presented by him, which is thus captioned as a correct direct quotation from Henderson v. State, supra:
“Testimony was offered by the State outside the presence of the jury on the question of consent to search. At the conclusion of the testimony offered by the State on this question, the attorney for the appellant requested permission of the court to examine the appellant in rebuttal to the State’s testimony. The request was refused by the court and proper objection and exception taken by the appellant to this action. In this respect the court committed reversible error.”
Appellant then argues, “The facts on this issue are identical with the facts stated above in the Henderson case.” We disagree with this statement, which appellant bases on the part of the transcript of testimony “offered by the State outside the presence of the jury on the question of consent to search” but it was before “the conclusion of the testimony offered by the State on this question.” It was during the cross-examination of State’s witness Investigator Tabb, as shown by the transcript as follows:
“MR. COLQUETT: I would like to put the defendant on the stand for just a moment.
“THE COURT: I’m not going to go that far on this.”
We can well understand that counsel could have thought that the State had concluded its testimony on the point out of the presence of the jury at the time he made his request to be allowed “to put the defendant on the stand for just a moment,” but the transcript does not support any such conclusion, and the trial court should not be placed in error for its not being willing for the defendant to be placed on the stand as a witness out of the presence of the jury during the time that the State’s witness was testifying out of the presence of the jury. It is to be noted also that no further request was ever made by the defendant that he be allowed to testify out of the presence of the jury on the question as to his consent to the search of the automobile.
In the only other issue raised by appellant, he contends that what he calls a “confession” by him at the Covington County Jail after his arrest was improperly admitted in evidence by reason of the claimed fact that there continued until that time “the taint” of an illegal arrest. The facts narrated above are sufficient, we think, to show that there is no merit to appellant’s contention that the arrest of defendant was illegal. The undisputed evidence shows that at the time of his actual arrest, the arresting officer knew there was some marijuana in appellant’s actual or constructive possession.
We now consider a question that goes to the heart of this case, which has not been raised in the trial court or in this court, but which gives us much greater concern than any of the questions we have already considered herein. We do so reluctantly in view of Rule 45B, Alabama Rules of Appellate Procedure, effective January 1, 1982, which provides:
“In all cases appealed to the Court of Criminal Appeals, except those in which the death penalty has been imposed, the Court of Criminal Appeals shall consider only questions or issues presented in briefs on appeal.”
After the verdict finding defendant guilty of possession of marijuana and the court’s adjudication of his guilt, it was made known to the court that defendant at the time of his arrest in the instant case was on probation for two felony convictions on December 18, 1978, one for burglary in the second degree and the other for grand larceny, for which he had received concurrent sentences of imprisonment for three *1297 years, with him to serve six months thereof and thereafter his sentence was suspended and he was placed on probation for five years. He had pleaded guilty to both offenses. The court ordered a presentence investigation and set the sentence hearing within approximately a month after his conviction in the instant case. At the conclusion of the sentence hearing in this case, the following occurred:
“THE COURT: Mr. Taylor, unfortunately, the Legislature has passed the Habitual Offenders Act that says, on conviction of any Class C felony, and you were convicted by a jury of the violation of the Uniform Controlled Substances Act, which is considered a Class C felony. Under the Habitual Offenders Act I would have no choice, with two previous convictions, but to sentence you as if it were a Class A felony, which would make the minimum ten years. You have been previously convicted. Now, you have anything to say before I impose sentence upon you?
“MR. TAYLOR: No, sir.
“THE COURT: I sentence you to ten years and one day in the penitentiary of Alabama. Now, you have the right to appeal. Under the law it is my duty to notify you of your right to appeal. At this time do you wish to give notice of appeal and ask for suspension of sentence?
“MR. COLQUETT: Yes, sir, and at this time, I want to file a motion for a new trial, and would you set a date for hearing other than today?
“THE COURT: Alright.
“(Whereupon court was adjourned).”
A motion for a new trial was filed on behalf of defendant and overruled by the court. A formal judgment entry was entered sentencing defendant to imprisonment for ten years and one day.
The question raised by us requires special, careful consideration of an important proviso of the Alabama Uniform Controlled Substances Act as found in Code of Alabama 1975, § 20-2-70, as follows:
“... Provided, that any person who possesses any marihuana for his personal use only is guilty of a misdemeanor and, upon conviction for the offense, shall be imprisoned in the county jail for not more than one year, and in addition, shall be fined not more than $1,000.00 ...”
The quoted proviso and related principles of law have been given discrete consideration in a number of cases. In one of the first cases on the subject, Powers v. State, 49 Ala.App. 690, 275 So.2d 369, 373 (1973), it was stated:
“We pretermit making an observation at this time as to which party — the State or the defendant — has the burden or duty to prove to the appropriate degree that the defendant did or did not have the marijuana for his personal use only. The Legislature at some early session may want to consider placing the burden. Suffice it to say the evidence, supra, created an issue for the jury to decide such use vel non. The defendant did not take the witness stand.”
It appears that the Legislature has not placed the burden and since Powers v. State, supra, it has been uniformly held that for a defendant charged with possession of marijuana to come within the quoted proviso the burden is upon him to show that his possession of marijuana was for his personal use only, since possession for personal use only is a defensive matter. Corbin v. State, 312 So.2d 604 (Ala.Cr.App. 1975); Roberts v. State, 349 So.2d 89 (Ala.Cr.App.1977), writ denied, 349 So.2d 94 (Ala.1977). It is to be noted that at times in an indictment for possession of marijuana it is expressly charged that defendant’s possession thereof was not for his personal use only, thereby expressly charging a felony, and at times the indictment has expressly charged the possession was for defendant’s personal use only, thereby expressly charging a misdemeanor. At still other times, we find that the indictment charges the defendant with the sale of mar *1298 ijuana, which precludes the notion that the charge is for a misdemeanor only.[1]
Our review of the transcript in the instant case reveals that only at one time during the trial was the word “felony” used, which was during the first part of the court’s oral charge to the jury, wherein it was said:
“As you have been told, this indictment charges the defendant with the felony of possession of marijuana, and later in this charge, I will define to you the material elements contained in this offense.”
At no time during the trial, including the oral charge of the court, do we find any reference whatever to the question whether the defendant’s alleged possession of marijuana was for his personal use only. The trial court made it clear to the jury in its oral charge that it was for the jury “to determine whether or not the State has satisfied you beyond a reasonable doubt and to a moral certainty that the defendant possessed this prohibited substance,” without at any time affording the jury an opportunity to find that the defendant was guilty of the possession of it for his personal use only.
In our opinion, the jury correctly found the defendant guilty of possession of marijuana, but it is also our opinion that, according to the undisputed evidence, defendant was not guilty of selling or giving away marijuana or the possession of it other than for his personal use only.
We realize that the amount of marijuana possessed by a defendant is not the sole criterion for determining whether it is for his personal use only. Nevertheless, in accordance with logic and with previous decisions on the subject, the amount of marijuana possessed can have a material effect upon whether it was for the defendant’s personal use only.
As shown by the expert witness who analyzed all of the marijuana in the automobile at the time of defendant’s arrest for the offense of possession of marijuana, the total weight of the marijuana was less than 4 grams, or, stated otherwise, less than the weight of eight silver dimes. Even though marijuana has an extremely low specific gravity and the comparison of its weight with that of metal can be misleading, we further note that much more than three-fourths of the marijuana involved was contained in a penny match box. We realize that there can be and often is an illicit market for a penny match box of marijuana or even for one marijuana cigarette, but the undisputed evidence in this case was that the marijuana involved was not in the process of being sold or given away by defendant. In his own testimony he admitted possession of some of the marijuana that was found in his automobile. All of the evidence is to the effect that whatever marijuana was in his possession, actual or constructive, was in his possession for his personal use only.
In our opinion, the verdict and judgment of conviction were correct and should stand, but that they can justly stand only for a misdemeanor. It follows necessarily that there was no basis for the application of the Habitual Felony Offenders Act, which is limited in its application to the commission of a felony by a defendant who “has been previously convicted of any felony and after such conviction has committed another felony.” Alabama Criminal Code, § 13A-5-9(a).
The judgment of conviction should be affirmed and the cause remanded for the court to fix defendant’s punishment for a misdemeanor and sentence him accordingly-
In reaching the foregoing conclusion, we wish to make it clear that we do not intentionally minimize hereby the offense of possession of marijuana for personal use only, as to which there seem to be pro and con contentions in America today. We believe that the use of marijuana, by whatever of several names it has been called, is a matter of ancient history, but that its use is a relatively modern evil in our country, even though there are those who express a con *1299 trary view. Its use is a far cry from being a product of the founding fathers of this nation. Its origin is not to be found among civilized people but in paganistic parts of the world, long before the art of smoking anything was found to exist among the Indians of America, at a time when the use of marijuana or its equivalent was known to have been in existence among heathens, by whom it was brewed and drunk, as they knew nothing of smoking, for hallucinative effect, in their deification of phenomena of nature in their idolatrous worship, which has been well expressed in “The Brewing of Soma.” The poem is too long for a complete recital thereof herein. The following are some of its verses, as penned by John Greenleaf Whittier:
“The fagots blazed, the caldron’s smoke Up through the green wood curled;
‘Bring honey from the hollow oak,
Bring milky sap,’ the brewers spoke, In the childhood of the. world.
“And brewed they well or brewed they ill,
The priests thrust in their rods,
First tasted, and then drank their fill,
And shouted, with one voice and will,
‘Behold the drink of gods! ’
“They drank, and lo! in heart and brain A new, glad life began;
The gray of hair grew young again,
The sick man laughed away his pain,
The cripple leaped and ran.
“ ‘Drink, mortals, what the gods have sent,
Forget your long annoy.’
So sang the priests. From tent to tent The Soma’s sacred madness went,
A storm of drunken joy.
“The desert’s hair-grown hermit sunk The saner brute below;
The naked Santón, hashish-drunk,
The cloister madness of the monk,
The fakir’s torture-show!
“And yet the past comes round again, And new doth old fulfil;
In sensual transports wild as vain
We brew in many a Christian fane
The heathen Soma still!
“Dear Lord and Father of mankind, Forgive our foolish ways!
Reclothe us in our rightful mind,
In purer lives They service find,
In deeper reverence, praise.”
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
JUDGMENT OF CONVICTION OF POSSESSION OF MARIJUANA AFFIRMED, BUT MODIFIED SO AS TO SHOW CONVICTION OF THE MISDEMEANOR OF POSSESSION THEREOF FOR PERSONAL USE ONLY; REMANDED FOR SENTENCE.
HARRIS, TAYLOR and HUBERT, JJ., concur.
TYSON, J., concurs in the result.
BOWEN, P.J., dissents with an opinion, in which SAM W. TAYLOR, J., joins.

. Not involved but not overlooked is the relatively new statute, Trafficking in Illegal Drugs (Acts 1980, No. 80-587). Code of Alabama 1975, 1982 Cum.Supp. § 20-2-80.