[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 797 
Bobby Calhoun and Malcolm Schartau were indicted for the unlawful possession of marijuana in violation of § 20-2-70, Code of Alabama 1975.
After entering pleas of not guilty, the appellees filed motions to suppress the evidence. A hearing was held on these motions and, following the hearing, the trial judge granted the appellees' motions to suppress. The order of the trial judge is quoted below. *Page 798 
ORDER
 "The matters before the court are defendants' motions to suppress evidence obtained through search of their persons and vehicle. Upon consideration of same and ore tenus testimony, the court is of the opinion that the searches were made pursuant to strong suspicion, but not upon probable cause as required by the United States Constitution, i.e., no one, not even the confidential informant herein, knew from personal observation or otherwise that the defendants had in their possession marijuana at the time of their detention and search. The court is of the further opinion that the officers' actions were pursuant to legal precedent, except detention and searches which were premature, and evidence seized cannot support convictions herein. Therefore, it is
 "ORDERED AND ADJUDGED that the evidence seized from the defendants pursuant to the searches of their persons and vehicle is suppressed and shall not be used against them." (R.92).
The State now appeals from this order of the trial court pursuant to Rule 17(a), Alabama Temporary Rules of Criminal Procedure.
The following facts were ascertained during the hearing on the motions to suppress.
Sometime between 1:00 and 2:00 on the afternoon of February 4, 1985, John Givens, a narcotics officer with the Dothan Police Department, received a phone call at his house from a confidential informant. The informant had provided Givens with information in the past and the information had been reliable. Givens had made cases from information received from this informant in the past and convictions had been obtained from this informant.
The informant told Givens that Calhoun and Schartau would be ". . . together that evening and that they would be making a trip to an area in Wicksburg — unknown — just in the Wicksburg area, and they would be buying dope — marijuana, particularly." (R. 5-6). The informant said that the appellees would leave Coy's Gameroom that night in a maroon El Camino and would return to Coy's after making the buy.
Shortly after the call, Givens and Officer White of the Dothan Police Department, met the informant at the K-Mart parking lot in Dothan. Two other people were present at the meeting at the K-Mart parking lot. One was an unidentified female and the other was Susan Norton, a friend of the informant's and appellee Schartau's wife.
At the meeting in the parking lot, White and Givens remained in their vehicle while the informant talked to them through the window. Givens and White asked the informant if they could make a purchase from the appellees. The informant replied that this was unlikely since the appellees did not know them or might recognize them as narcotics agents.
At this point, a plan was conceived whereby the officers would supply Norton with $40 which she would give to her husband so that he could purchase marijuana for her and deliver it to her at Coy's Gameroom.
Givens and White then returned to the police station. The informant, Norton and the unidentified female also came to the station. There, Givens gave the informant the $40. From this point, there was no further contact between the officers and the informant or Norton until after the arrest of the appellees.
That night, Officers Givens and White drove to Coy's Gameroom and parked. At some point, the maroon El Camino left Coy's. The officers followed this vehicle on Highway 84 around the circle and determined it was going towards Wicksburg. The officers then returned to Coy's and waited until the El Camino returned.
When this vehicle got back to the parking lot of Coy's, the officers approached the vehicle. Officer Givens approached the driver's side of the vehicle, identified himself to the driver, advised him of his information and told the driver to get out of the vehicle. The driver was Calhoun. When *Page 799 
Calhoun exited the vehicle, Givens could see two hand-rolled marijuana cigarettes in Calhoun's shirt pocket.
As White approached the passenger side of the vehicle, he saw the passenger (Schartau) shut the glove box. After Schartau got out of the vehicle, White searched Schartau and found a cigarette pack in his shirt pocket with two hand-rolled marijuana cigarettes in it. White further searched the vehicle and found a plastic bag containing plant material in the glove box.
The appellees were then placed under arrest for possession of marijuana.
Anita Skinner also testified at the hearing. She stated that, on the afternoon of February 4, 1985, Norton and a person named Scott Wynn came over to her house. Norton and Wynn were "girlfriend" and "boyfriend". At some point, Skinner accompanied Wynn and Norton to the parking lot of K-Mart. At the parking lot, Officers Givens and White drove up and Norton talked to them.
A while later, she, Norton and Wynn went to the police station. At the station, Officer White gave Norton $40. Skinner heard White and Givens tell Wynn to "stay out of it." (R. 63).
 I
Prior to our discussion of the substantive issue of this appeal, we must first address the appellees' contention that this court does not have jurisdiction over this appeal. Rule 17(a), Alabama Temporary Rules of Criminal Procedure, provides that:
 "An appeal may be taken by the state in a felony case to the court of criminal appeals from a pre-trial order of the circuit court (1) suppressing a confession or admission or other evidence, (2) dismissing an indictment, information, or complaint (or any part of an indictment, information, or complaint), or (3) quashing an arrest or search warrant. Such an appeal may be taken only if the district attorney certifies to the court of criminal appeals that the appeal is not brought for the purpose of delay and that the order, if not reversed on appeal, will be fatal to the prosecution of the charge."
(emphasis supplied).
The indictment in this case states that the appellees ". . . did have in their possession marijuana, a controlled substance, contrary to law, in violation of 20-2-70 of the Code of Alabama." (R. 78). The appellees assert that, since the indictment did not specifically charge a felony (possession for other than personal use), they could be convicted of a misdemeanor (possession for personal use) and this appeal would have been wrongfully taken.
 "Except as authorized by this chapter, any person who possesses, sells, furnishes, gives away, obtains or attempts to obtain by fraud, deceit, misrepresentation or subterfuge or by the forgery or alteration of a prescription or written order or by the concealment of material fact or by use of false name or giving a false address controlled substances enumerated in schedules I, II, III, IV and V is guilty of a felony and, upon conviction, for the first offense may be imprisoned for not less than two nor more than 15 years and, in addition, may be fined not more than $25,000.00; provided, that any person who possesses any marihuana for his personal use only is guilty of a misdemeanor and, upon conviction for the offense, shall be imprisoned in the county jail for not more than one year, and in addition, shall be fined not more than $1,000.00; provided further, that the penalties for the subsequent offenses relating to possession of marihuana shall be the same as specified in the first sentence of this subsection."
Ala. Code, § 20-2-70(a) (1975). (emphasis supplied).
 "It is to be noted that possession of marijuana includes the lesser offense of possession of marijuana for personal use (Title 22, § 258(47) only is a misdemeanor offense embraced in a felony charge of possession of marihuana. This inclusion is by operation of law. Haynes v. State, 54 Ala. App. 714, 312 So.2d 406, cert. denied 294 Ala. 758, 312 So.2d 414." *Page 800 
Coleman v. State, 344 So.2d 1249, 1250 (Ala.Crim.App. 1977).
 "An indictment charging possession of marijuana includes the lesser offense of possession of marijuana for personal use. Lee v. State, Ala.Cr.App. 350 So.2d 743; Butts v. State, Ala.Cr.App. 346 So.2d 497; Van Nostrand v. State, 56 Ala. App. 141, 319 So.2d 760. An indictment charging possession of marijuana, also, informs a defendant of the nature of the charges against him and fairly apprises him that he is charged with the lesser offense of possession of marijuana for personal use, a misdemeanor. Butts v. State, supra."
Reed v. State, 401 So.2d 131, 139 (Ala.Crim.App.), cert. denied, 401 So.2d 139 (Ala. 1981).
 "In Barnett v. State, 373 So.2d 1226 (Ala.Cr.App. 1979), we stated the following, speaking through Judge Bowen:
 "In Alabama, in a prosecution for illegal possession of marijuana, there is a presumption that the possession is for other than personal use. The showing of possession for personal use is a defensive matter and the burden of proving this matter is upon the defendant. Lee v. State, 350 So.2d 743 (Ala.Cr.App. 1977); Roberts v. State, 349 So.2d 89, (Ala.Cr.App.), cert. denied, 349 So.2d 94 (Ala. 1977); Schenher v. State, 38 Ala. App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). The State need not prove that the possession of marijuana was not for personal use. Corbin v. State, 55 Ala. App. 33, 312 So.2d 604 (1975); Watkins v. State, 50 Ala. App. 111, 277 So.2d 385, cert. denied, 291 Ala. 801, 277 So.2d 389 (1973)."
 "See also, Brown v. State, 392 So.2d 1248
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266
(Ala. 1981), and other cases listed in annotations to § 20-2-70, Code of Alabama 1975."
Kelley v. State, 448 So.2d 500, 500-501 (Ala.Crim.App. 1984).
Therefore, when an indictment charges possession of marijuana, that charge contained within the indictment is afelony unless the indictment states that the possession is for personal use and thus, the offense charged would be a misdemeanor.
Also contained in an indictment for possession of marijuana is the lesser included offense of possession for personal use, a misdemeanor. However, the accused must present evidence to prove that the possession was for personal use to justify a conviction of the lesser included offense. Lee v. State,350 So.2d 743 (Ala.Crim.App. 1977). Otherwise, a conviction for possession of marijuana is a felony if the State makes out a prima facie case. Kelley, supra. But see, Taylor v. State,443 So.2d 1292 (Ala.Crim.App. 1983).
While this court recognizes the possibility that the appellees could be convicted of possession for personal use (a misdemeanor) if this cause were reversed and remanded for a trial, we are not in the position to determine that the possession was, in fact, for personal use. This is a question for the jury to determine from all the evidence presented at trial.
The indictment in the case at bar charges possession of marijuana. The presumption is that the charge is afelony. The presumption can only be overcome by the evidence presented at trial.
We hold that the State's appeal was from a pretrial order of the trial court in a felony case and, therefore, was proper.
 II
All searches without a warrant are per se unreasonable unless conducted pursuant to one of the well-recognized exceptions to the warrant requirement. Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). These exceptions have been delineated by the Alabama Supreme Court in Daniels v.State, 290 Ala. 316, 276 So.2d 441 (1973). They are:
 "(1) In 'plain view,' see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Page 801 
 "(2) With 'consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
 "(3) As 'incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In 'hot pursuit' or 'emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo. 1970) 454 S.W.2d 481;
 "(5) Where 'exigent circumstances' exist coincidental with 'probable cause' (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and,
 "(6) In 'stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889
(1968)."
Daniels, supra, 290 Ala. at 318, 276 So.2d 441. (footnote omitted). See also (7) The "inventory search exception," So.Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092,49 L.Ed.2d 1000, (1976); (8) "Open Fields exception" Oliver v. UnitedStates, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984);Maughan v. State, 473 So.2d 1140 (Ala.Crim.App. 1985).
Since the search of the appellees and their vehicle was conducted without a warrant, the State has the burden of showing that one of the exceptions to the warrant requirement was present in order for this court to uphold the search.Coolidge, supra. Several of the exceptions are involved in this case and we must therefore discuss each separately and in relation to each appellee.
 A Incident to a Lawful Arrest
Section 15-10-3, Code of Alabama 1975 permits an officer to make a warrantless arrest for a felony that has been committed when he has reasonable cause to believe that the person arrested committed it. The term "reasonable cause" used in § 15-10-3 has been equated with probable cause. Meeks v. State,434 So.2d 844 (Ala. 1983).
Therefore, if a warrantless arrest is based on probable cause and thus, lawful, any evidence seized incident to that arrest can be admitted into evidence. Draper v. United States,358 U.S. 307, 314, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); Sellersv. State, 48 Ala. App. 178, 263 So.2d 156 (1972); Mauldin v.State, 402 So.2d 1106 (Ala.Crim.App. 1981).
In seeking to justify a warrantless arrest, probable cause exists "where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Knight v. State, 346 So.2d 478, 481
(Ala.Crim.App.), cert. denied, Ex parte State ex rel. Attorney General,346 So.2d 483 (Ala. 1977), appeal after remand, Knight v.State, 356 So.2d 765 (Ala.Crim.App. 1978); Waldrop v. State,462 So.2d 1021 (Ala.Crim.App. 1984), cert. denied,462 So.2d 1021 (Ala. 1985). Mere suspicion in the officer's mind that an offense has been committed is not enough to justify a warrantless arrest. Tice v. State, 386 So.2d 1180
(Ala.Crim.App.), cert. denied, 386 So.2d 1187 (Ala. 1980); Duncan v.State, 278 Ala. 145, 176 So.2d 840 (1965).
Hearsay information from a confidential informant may provide the basis for a finding of probable cause. Payton v. State,47 Ala. App. 347, 254 So.2d 351 (1971); Thomas v. State,50 Ala. App. 227, 278 So.2d 230 (1973).
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a "totality of circumstances" test which is to be used for determining whether an informant's tip establishes probable cause to issue a search warrant. This test should *Page 802 
also apply in the determination of probable cause to make a warrantless arrest.[1]
In its opinion in Gates, supra, the Supreme Court abandoned the two-pronged analysis of probable cause determinations set out in Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509,12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410,89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
Aquilar, supra, required that a police officer must, when applying for a warrant, supply the magistrate with facts which indicate that the officer's informant is "credible" or that the informant's information is reliable and the informant's basis of knowledge for his tip.
The Supreme Court in Spinelli, supra, further defined theAquilar test. It stated that independent police corroboration of some of the details of an informant's tip could overcome a deficiency in the credibility prong of the Aquilar test. Further, it held that, even if the basis of knowledge prong ofAquilar was not satisfied, a tip could still establish probable cause if the tip was detailed to the extent that would allow the magistrate to conclude "that he [was] relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli, supra, 393 U.S. at 416,89 S.Ct. at 589. This became known as the "self-verifying details" analysis.
In Gates, the Supreme Court did not completely reject their previous holdings in Aquilar and Spinelli. In fact, the court stated that "the informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value" of an informant's tip and should be viewed as "closely intertwined issues that may usefully illuminate the commonsense, practical question" as to whether probable cause exists. Gates, supra, 103 S.Ct. at 2327-2328. However, these factors should not be analyzed independently of each other to establish probable cause. Gates, supra, 103 S.Ct. at 2329. "A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, supra,103 S.Ct. at 2329.
In their opinion, the Supreme Court failed to delineate any particular or specific guidelines to aid in our application of the "totality of circumstances" analysis. Therefore, in our discussion, we must look at all of the circumstances of this case to determine if probable cause to arrest existed, including those circumstances which would have been examined under the old Aquilar-Spinelli analysis.
 (1) Probable Cause to Arrest — Calhoun
In applying the "totality of circumstances" analysis to Calhoun, it is without question that Officers White and Givens did not have probable cause to arrest Calhoun. The only information the officers had concerning Calhoun was that he would be with Schartau on the night in question. Officer White repeatedly testified during the suppression hearing that they had no information that Calhoun had any drugs on him or was going to purchase them that night. There was no basis for suspecting Calhoun had committed or was committing a crime. The mere fact that Calhoun accompanied Schartau that night does not provide that basis. Not only did the officers not have probable cause to arrest Calhoun, they did not even have a "suspicion" that he had committed a crime. Therefore, any evidence seized from Calhoun cannot be sustained on the basis that it was incident to a lawful arrest. *Page 803 
 (2) Probable Cause to Arrest — Schartau
White testified that he had received information from this informant on previous occasions and that the information had proved to be reliable and had been used to make cases and obtain convictions. While this testimony would, in most circumstances, be sufficient to establish the informant's credibility, there are other circumstances we must examine in this regard.
A third party was involved in the situation we have before us. Therefore, the credibility of the third party is also relevant. The third party was Norton, Schartau's wife. Givens stated that Norton was involved in this case from the beginning and that he had talked to her about the case at the police station. (R. 33, 41). There was also testimony at the suppression hearing by Skinner, who was present at the K-Mart parking lot when the officers met with the informant. Skinner stated that the officers talked with Norton at the time, rather than with the informant.
Givens also testified that Norton was a friend of the informant and that he knew that Norton was Schartau's wife. After the appellees' arrests, White received information that "they" (the informant and Norton) had left the State.
Skinner testified that Norton and Wynn were "boyfriend" and "girlfriend."
It seems obvious to this court that part of the information received by the officers concerning this case was supplied by Norton and she was clearly an integral part of the arrangement with the police.
When all of these circumstances are viewed together, the informant's and Norton's motives are certainly suspect, and thus, their credibility is questionable.
As we discussed previously, independent corroboration by the police of the details of a tip can bolster the credibility of the informer or the reliability of the tip. The Supreme Court in Gates, supra, seems to indicate that corroboration of innocent details of a tip, as was the case here, is sufficient to provide a basis for a showing of probable cause. "[I]nnocent behavior frequently will provide the basis for a showing of probable cause" if "seemingly innocent behavior [becomes] suspicious in the light of the initial tip." Gates, supra,103 S.Ct. at 2335.
The Supreme Court stated that their decision inDraper, supra, is a "classic case on the value of corroborative efforts of police officials." Gates, supra, 103 S.Ct. at 2334. In that case, a previously reliable informant, Hereford, told police that Draper, who was unknown to the police, would be arriving in Denver, Colorado, on a train from Chicago on one of two mornings. Hereford gave a detailed description of Draper and stated he would be wearing a light colored raincoat, brown slacks and black shoes and would be carrying a tan zipper bag. Hereford also said that Draper would be walking fast and would have a certain quantity of heroin on him.
On one of the mornings in question, a police officer "personally verified every facet of the information given him by Hereford except whether [Draper] had accomplished his mission and had the three ounces of heroin on his person or in his bag." Draper, supra, 79 S.Ct. at 333. The case at bar is easily distinguished from Draper, supra.
In Draper, the informant supplied the police with a very detailed tip and the police corroborated all of the details of the tip, except the fact that Draper had the heroin on him, by their independent investigation.
The informant's tip in the case at bar was not extremely detailed. The informant told Givens that Calhoun and Schartau would be together on the night in question and would leave Coy's in a maroon El Camino and go to an unknown place in the Wicksburg area. There, Schartau would purchase marijuana and the two would return to Coy's. This tip provided few details for the officers to corroborate.
Although the tip provided the names of Schartau and Calhoun, it did not contain a description of the appellees. The tip did *Page 804 
not even name the driver of the El Camino. Further, the destination of the El Camino included in the tip was very indefinite.
The State asserts that the police verified all of the facts included in the tip except for the purchase of the drugs. However, this court does not find such to be the case.
Givens testified that he only knew the appellees through the case that night. (R. 4). He did not know them previously. Therefore, he certainly did not verify that the two men in the El Camino that night were, in fact, Calhoun and Schartau. The fact was only verified after the two were told to get out of the vehicle by the officers. Further, the fact that the officers followed the El Camino in the general direction of Wicksburg does not sufficiently corroborate anything. It is reasonable to assume that the road to Wicksburg could also lead to other destinations. In fact, this part of the tip could only be verified if the police saw the El Camino stop at a place in the Wicksburg area. This was not done.
Therefore, the officers' verification of a few, innocuous details of the tip was not sufficient corroboration to establish probable cause particularly since several importantdetails were not confirmed.
The informant failed to supply the police with any facts
which would provide a basis of knowledge for his tip. In fact, it seems unlikely that there was a basis of knowledge for this tip and the time it was related to the police that afternoon.
Givens repeatedly testified that Schartau could not buy the marijuana without the money that was supplied by the police and he knew that Schartau did not have any marijuana or money at the time of the informant's tip. (R. 46). Therefore, if Schartau could only buy marijuana if he was supplied money by the police, it can hardly be said that, at the time of the tip, there was a basis of knowledge that Schartau would be purchasing marijuana. Furthermore, the basis of knowledge for the tip could not be inferred from the tip itself since we have already stated the tip was very general in detail.
As the United States Supreme Court stated in Gates, supra, probable cause deals with "probabilities." However, in this case, there were no probabilities, only suspicions.
The police, in order to justify a warrantless arrest of Schartau, had to rely on the assumption that the informant would give the money to Norton, Norton would give it to Schartau and he would agree to purchase the marijuana in the precise manner related in the tip. These assumptions are too tenuous on which to sustain a finding of probable cause. If the informant or Norton could have somehow confirmed the fact that Schartau received the money supplied by the police, probable cause would most likely have been established, considering all of the other circumstances. If the officers had known Schartau received the money and had agreed to the arrangement, they would have had facts within their knowledge, at the time of the arrest, which would have justified a reasonable man in the belief that Schartau had committed a crime. However, after the informant received the money from the officers, there was no further contact between the officers and the informant or Norton until after the arrest.
After examining all the circumstances in this case, in light of the totality of circumstances analysis set out inGates, supra, we hold that the officers did not have probable cause to arrest Schartau. Therefore, any evidence seized by the officers as a result of a search of Schartau incident to a lawful arrest was not admissible.
 B Probable cause with exigent circumstances
An argument could be made that the search may have been justified by the automobile exception to the warrant requirement. This exception requires a finding of probable cause and exigent circumstances. *Page 805 
However, since we have determined that there was no probable cause, a search cannot be justified as this exception, regardless of whether there were exigent circumstances.
 C Stop and Frisk
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968), the United States Supreme Court held that in certain circumstances police officers may stop a suspicious person and interrogate him on less than probable cause and make a search for dangerous weapons.
 "In Terry, it was held that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. 392 U.S. at 30, 88 S.Ct. at 1884-85."
Worthy v. State, 473 So.2d 634 (Ala.Cr.App. 1985).
As was true in Worthy, supra, "[t]here was no 'stop' in this case because the [appellees were] sitting in a parked car when approached by the two officers." Worthy, supra at 636. However, the appellees were seized when the officers approached their vehicle, identified themselves and told the appellees of their information and then ordered them out of the vehicle. Worthy, supra. Thus, since the appellees were seized by the officers, this intrusion involves the Fourth Amendment to the United States Constitution. We must, therefore, determine whether the seizure of these appellees and the subsequent search of them, was justified.
 (1) Schartau-Seizure "In stopping and frisk situations, courts have used a balancing test in determining the reasonableness of police conduct. The necessity of the stop and seizure must be viewed in light of the particular invasion which the stop and seizure involves. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The governmental interest which allows official intrusion upon a private citizen's Fourth Amendment rights is that of effective law enforcement. The individual citizen is protected against unreasonable searches and seizures.
". . . .
 "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio, supra. The appropriate question to ask is . . . [W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Terry v. Ohio, supra; Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973)."
Sterling v. State, 421 So.2d 1375 (Ala.Cr.App. 1982).
The test in stop and frisk cases implies a reasonableness standard rather than probable cause and the reasonableness of the officers' actions in these cases should be determined by the totality of the circumstances. United States v. Cortez,449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
Certainly an informant's tip can provide a basis for a stop and seizure, particularly when enhanced by further investigation by the police officer. Adams v. *Page 806 Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
The circumstances of this case have been thoroughly discussed previously in this opinion and there is no need to again review them at this point. While we have stated that the officers did not have probable cause to arrest or search Schartau, we do find that the officers had a "particularized and objective basis" for suspecting Schartau of criminal activity.Cortez, supra, 101 S.Ct. at 695; Worthy, supra at 637. While the facts within the officers' knowledge did not rise to the level of "probable cause," they did have information which justified them in seizing Schartau and conducting further an investigation into his activities. This action was certainly reasonable under the Fourth Amendment in light of all of the circumstances of this case.
 "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See id., [392 U.S.] at 23, 88 S.Ct., at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Id., at 21-22, 88 S.Ct. at 1879-1880; see Gaines v. Craven, 448 F.2d 1236 (CA9 1971); United States v. Unverzagt, 424 F.2d 396 (CA8 1979)."
Adams, supra, 92 S.Ct. at 1923.
The seizure of Schartau was ". . . merely a minor inconvenience and a petty indignity compared to the government's greater interest in crime prevention and detection." Sterling, supra, at 1379. Furthermore, the fact that Schartau was ordered out of the vehicle, instead of allowed to remain in the vehicle, is not unreasonable when compared to the necessity of protecting the officers' safety in these situations. Worthy, supra.
 Schartau-Frisk
" '[N]ot all stops call for a frisk.' 3 LaFave § 9.4, p. 115. A police officer may conduct a reasonable search of a person for weapons 'where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' Terry, 392 U.S. at 27,88 S.Ct. at 1883.
"In determining whether a frisk is justified, two factors must be considered:
 'In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered. One concerns whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous, and the other whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed.' 3 LaFave at § 9.4(a), p. 109."
Worthy, supra at 638.
The State cites Adams, supra, as authority for the search of Schartau. In Adams, supra, the police officer received information from a reliable informant that a man in a nearby car had narcotics and was carrying a gun at his waist. The officer approached the car and asked the suspect to get out of the car. Instead, the suspect rolled down the window. The police officer then reached into the vehicle and grabbed the gun from the suspect's waist. The suspect was then arrested for unlawful possession of a handgun and a subsequent search incident to that arrest revealed the presence of heroin on the suspect. The Supreme Court held the officer was justified in his actions with regard to the suspect. *Page 807 
However, the case at bar is easily distinguished fromAdams. The search which revealed the narcotics in Adams, supra, was reasonable as incident to the lawful arrest of the suspect on the handgun charge.
This court finds this case more closely resembles that ofSibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917
(1968). In that case, an officer saw the suspect talking with several known drug addicts. Sometime later, the suspect went into a restaurant and the officer again observed him talking to other known drug addicts. The officer then approached the suspect and ordered him to go outside. The officer then stated, "You know what I am after." Sibron, supra, 88 S.Ct. at 1894. The suspect then "mumbled something and reached into his pocket." Sibron, supra, 88 S.Ct. at 1894. At the same moment, the officer reached into the suspect's pocket and pulled out several glassine envelopes which contained heroin. The Supreme Court held that the search or frisk was unlawful because the officer was looking for narcotics rather than searching forweapons out of fear for his own safety.
Clearly, in the case at bar, Officer White was seeking marijuana rather than searching for weapons when he searched Schartau. There is absolutely no evidence that the officers hadany information that Schartau was armed and dangerous when the search of him was conducted. Further, there is no evidence that Schartau's actions justified any suspicion that he was armed and dangerous.
Thus, although the initial seizure of Schartau was reasonable under the Fourth Amendment, the search of Schartau was not. Therefore, the evidence seized as a result of this unreasonable search was not admissible against Schartau.
 (2) Calhoun-Seizure
As we stated before in this opinion, the officers had no reason to suspect Calhoun of any type of criminal activity. Consequently, they had no right to seize Calhoun. The officers certainly could have questioned Calhoun concerning his identity since they did not know which person was Schartau.
However, their act of ordering Calhoun out of the vehicle when they had no basis to suspect him of any wrongdoing was an unreasonable intrusion and an unlawful seizure under the Fourth Amendment. The fact that Calhoun was in the presence of someone who was suspected of criminal activity does not justify his detention.
Therefore, since the seizure of Calhoun was unreasonable, the subsequent search of him was also unreasonable. Any evidence seized from Calhoun cannot be justified by this exception to the warrant requirement.
 D Plain View
This exception to the warrant requirement has no applicability to Schartau since nothing seized from him was in "plain view." All evidence seized from Schartau was discovered by the search of him.
However, Officer Givens did assert that the marijuana cigarettes seized from Calhoun were in "plain view" when he got out of the vehicle. Therefore, we must determine if the seizure of the cigarettes was justified under the "plain view doctrine" enunciated in Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
 " '[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be."
Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, at 1540-41,75 L.Ed.2d 502 (1983). (Footnote omitted.) *Page 808 
Thus, evidence seized under the plain view doctrine is inadmissible unless the officer was properly in a position to view the evidence which was thus seized. As we have stated before, the officers had no probable cause to arrest Calhoun and the seizure of his person was improper. Since the officers unlawfully ordered Calhoun out of the vehicle, they were without any Fourth Amendment justification for their access to view the marijuana cigarettes. If Officer Givens had seen the marijuana cigarettes in Calhoun's pocket while he was seeking Calhoun's identity and while Calhoun was still seated in the driver's seat, he would have properly been in a position to view the cigarettes and their subsequent seizure would have been reasonable under the Fourth Amendment. However, such was not the case. White v. State, 49 Ala. App. 5, 267 So.2d 802
(1972).
Calhoun was improperly ordered out of the vehicle in violation of the Fourth Amendment. Givens did not see the cigarettes in Calhoun's pocket until after he got out of the vehicle.
Therefore, the cigarettes seized from Calhoun cannot be upheld by the "plain view doctrine."
 E
Lastly, since the evidence seized from the persons of the appellees cannot be justified under any of the exceptions to the Fourth Amendment, neither can the evidence seized from the glove compartment after a search of the vehicle.
After our thorough examination of this case, we must, therefore, uphold the trial court's order granting the appellee's motion to suppress the evidence. This cause is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The amount of evidence required to establish probable cause to search is essentially the same as probable cause to arrest. The difference is when determining probable cause to arrest, the probability relates to the suspect's commission of a crime rather than the probability of finding the object of the search. Probable cause to make a warrantless arrest is the same as would justify the issuance of a warrant to arrest. Knight v.State, 346 So.2d 478 (Ala.Crim.App.), cert. denied, Ex parteex rel. Attorney General, 346 So.2d 483 (Ala. 1977), appeal after remand Knight v. State, 356 So.2d 765 (Ala.Crim.App. 1978); Waldrop v. State, 462 So.2d 1021 (Ala.Crim.App. 1984); cert. denied, 462 So.2d 1021 (Ala. 1985).